**No. 23-55478**

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

ALEXANDRIA MOSLEY, REJOYCE KEMP,
BERENICE CISNEROS, BRUCE PARKER,

*Plaintiffs-Appellants*

v.

WELLS FARGO & CO.,
WELLS FARGO BANK, N.A.,

*Defendants-Appellees*

---

Appeal from a Decision of the
United States District Court
for the Southern District of California
U.S.D.C. Case No. 3:22-cv-01976-DMS-AGS
The Honorable Dana M. Sabraw, District Judge

---

## APPELLANTS' OPENING BRIEF

---

Richard D. McCune, State Bar No. 132124
rdm@mccunewright.com
Steven A. Haskins, State Bar No. 238865
sah@mccunewright.com
Andrew Van Ligten, State Bar No. 348696
avl@mccunewright.com
Valerie L. Savran, State Bar No. 334190
vls@mccunewright.com
Richard A. Nervig, State Bar No. 226449
ran@mccunewright.com
Emily J. Kirk, IL Bar No. 6275282
ejk@mccunewright.com
**McCune Law Group, APC**
3281 East Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiffs-Appellants,
Alexandria Mosley. Rejoyce Kemp,
Berenice Cisneros, Bruce Parker*

# **TABLE OF CONTENTS**

*Page*

TABLE OF CONTENTS .................................................................... i

TABLE OF AUTHORITIES ............................................................ iv

INTRODUCTION ............................................................................1

STATEMENT OF JURISDICTION.....................................................3

STATEMENT OF THE ISSUE............................................................4

STATEMENT OF THE CASE.............................................................5

    I      Background of the Litigation .............................................5

           A.    Wells Fargo Imposes the Arbitration Agreement upon

                    Consumers.....................................................................6

           B.    Appellants File Individual Arbitration Demands ......................7

           C.    The Parties Agree To Supplemental Rules To Resolve The

                    Mass Arbitration Filings ............................................8

           D.    Wells Fargo Imposes Class-wide Procedures in Violation of the

                    Agreement .................................................................9

    II    Proceedings in the District Court .......................................11

           A.    The Lawsuit..................................................................11

           B.    The District Court's Decision ...................................12

SUMMARY OF THE ARGUMENT ....................................................14

## **TABLE OF CONTENTS (continued)**

*Page*

STANDARD OF REVIEW ........................................................................15

ARGUMENT ..........................................................................................16

I     Appellants' Breach of Contract Claims Should Not Be Compelled To

Arbitration ....................................................................................16

     A.    The District Court Erred In Compelling The First Cause of

Action To Arbitration ............................................................16

     B.    The Arbitration Agreement Exempted the First Cause of Action

....................................................................................18

     C.    The District Court Misapplied the Law to Limit the Carve-Out

Provision ...............................................................................22

II    The Arbitration Agreement Did Not "Clearly and Unmistakably"

Delegate Arbitrability...................................................................25

     A.    Wells Fargo Failed to Unambiguously Delegate Arbitrability to

the Arbitrator.........................................................................26

     B.    The Carve-Out Provision Undermines the Existence of a Broad

Delegation .............................................................................29

III    The FAA Authorizes Judicial Review of the PA Order.....................31

# **TABLE OF CONTENTS (continued)**

*Page*

A.    Appellants' Substantive Contractual Rights Have Been
Violated ........................................................................32

B.    The Parties Agreed that the PA Order Was "Final and Binding"
.....................................................................................38

CONCLUSION ....................................................................39

STATEMENT OF RELATED CASES ..................................41

CERTIFICATE OF COMPLIANCE .....................................42

# <u>TABLE OF AUTHORITIES</u>

*Page(s)*

**Cases**

*20/20 Commc'ns, Inc. v. Crawford*,
  930 F.3d 715 (5th Cir. 2019)............................................................... 33

*Adams v. Postmates, Inc.*,
  414 F. Supp. 3d 1246 (N.D. Cal. 2019) ................................... 18, 20, 21

*Ajamian v. CantorCO2e*,
  203 Cal. App. 4th 771 (2012) ........................................................ 27, 30

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................... 16

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
  935 F.3d 274 (5th Cir. 2019)........................................................ Passim

*AT&T Mobility LLC v. Bernardi,*
  11 Civ. 03992, 11 Civ. 04412, 2011 WL 5079549
  (N.D. Cal. Oct. 26, 2011) ................................................................... 37

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)..................................................................... Passim

*Baker v. Osborne Dev. Corp.*,
  159 Cal. App. 4th 884 (2008) ............................................................. 30

*Balen v. Holland Am. Line Inc.*,
  583 F.3d 647 (9th Cir. 2009)............................................................... 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................ 9, 11

*Capriole v. Uber Techs., Inc.*,
  7 F.4th 854 (9th Cir. 2021) ........................................................... 23, 24

*Caremark, LLC v. Chickasaw Nation*,
  43 F.4th 1021 (9th Cir. 2022) ............................................................. 26

## TABLE OF AUTHORITIES (continued)

*Page(s)*

*Catamaran Corp. v. Towncrest Pharmacy*,
  864 F.3d 966 (8th Cir. 2017).................................................................. 33, 35

*Cobarruviaz v. Maplebear, Inc.*,
  143 F. Supp. 3d 930 (N.D. Cal. 2015) ................................................... 30, 31

*Coup v. Scottsdale Plaza Resort, LLC*,
  823 F. Supp. 2d 931 (D. Ariz. 2011)............................................................ 13

*De Salles v. Cook*,
  No. CV 16-1111 DMG(PJWx), 2016 WL 9113995
  (C.D. Cal. May 12, 2016)............................................................................. 13

*Del Webb Cmtys, Inc. v. Carlson*,
  817 F.3d 867 (4th Cir. 2016)....................................................................... 33

*E.E.O.C. v. Waffle House, Inc.*,
  534 U.S. 279 (2002)............................................................................... 18, 20

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995)............................................................... 18, 25, 26, 27

*Goldman, Sachs & Co. v. City of Reno*,
  747 F.3d 733 (9th Cir. 2014)....................................................................... 18

*Gonzales v. Charter Comm'cns, LLC*,
  497 F. Supp. 3d 844 (C.D. Cal. 2020) ................................................... 27, 28

*Herrington v. Waterstone Mortg. Corp.*,
  907 F.3d 502 (7th Cir. 2018)....................................................................... 33

*Hodges v. Comcast Cable Comm's, LLC*,
  21 F.4th 535 (9th Cir. 2021) ....................................................................... 38

*Jack v. Ring LLC*,
  A165103, A165386, --- Cal. Rptr. 3d ---,
  2023 WL 3639767 (Cal. Ct. App. May 25, 2023) .................................... 29

**TABLE OF AUTHORITIES (continued)**

*Page(s)*

*Jackson v. Amazon.com, Inc.*,
   65 F.4th 1093 (9th Cir. 2023) ............................................................. 17

*John Wiley & Sons, Inc. v. Livingston*,
   376 U.S. 543 (1964) ............................................................................ 31

*JPay, Inc. v. Kobel*,
   904 F.3d 923 (11th Cir. 2018) ............................................................ 33

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) ................................................................. Passim

*Local Joint Exec. Bd. v. Mirage Casino-Hotel, Inc.*,
   911 F.3d 588 (9th Cir. 2018) ................................................. 26, 27, 28

*Magill v. Wells Fargo Bank, N.A.*,
   No. 4:21-cv-01877 YGR, 2021 WL 6199649
   (N.D. Cal. June 25, 2021) ...................................................... 21, 30, 31

*Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*,
   No. 22-CV-00064-LK, --- F. Supp. 3d ---, WL 372381
   (W.D. Wash. Jan. 24, 2023) ................................................... 21, 22, 24

*McClenon v. Postmates Inc.*,
   473 F. Supp. 3d 803 (N.D. Ill. 2020) ........................................... 20, 21

*McKesson Corp. v. Local 150 IBT*,
   969 F.2d 831 (9th Cir. 1992) .............................................................. 32

*Meadows v. Dickey's Barbecue Rests. Inc.*,
   144 F. Supp. 3d 1069 (N.D. Cal. 2015) ............................................. 27

*Merrion v. Jicarilla Apache Tribe*,
   455 U.S. 130 (1982) ............................................................................ 26

*Metro. Life Ins. v. Bucsek*,
   919 F.3d 184 (2d Cir. 2019) ......................................................... 28, 30

## <u>TABLE OF AUTHORITIES (continued)</u>

*Page(s)*

*Millmen Local 550, United Broth. of Carpenters and Joiners of Am., AFL-CIO v.
Wells Exterior Trim*,
   828 F.2d 1373 (9th Cir. 1987) ............................................................. 38

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ............................................................................ 17

*Mohamed v. Uber Technologies, Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ................................................. 19, 20, 31

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
   770 F.3d 1010 (2d Cir. 2014) ............................................ 18, 29, 30, 31

*Nelson v. Dual Diagnosis Treatment Ctr.*,
   292 Cal. Rptr. 3d 740 (Cal. Ct. App. 2022) ........................................ 26

*Nguyen v. Barnes & Noble, Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ............................................................. 15

*Opalinski v. Robert Half Int'l Inc.*,
   761 F.3d 326 (3d Cir. 2014) ................................................................ 33

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
   724 F.3d 1069 (9th Cir. 2013) ....................................................... 18, 25

*P&P Indus., Inc. v. Sutter Corp.*,
   179 F.3d 861 (10th Cir. 1999) ............................................................. 39

*Pace St. Charles v. J.A. Jones, Contr. Co.*,
   823 F.2d 120 (5th Cir. 1987) ............................................................... 39

*Rainwater v. Nat'l Home Ins. Co.*,
   944 F.2d 190 (4th Cir. 1991) ............................................................... 39

*Reed Elsevier, Inc. v. ex rel. LexisNexis Div. v. Crockett*,
   734 F.3d 594 (6th Cir. 2013) ............................................................... 33

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010) ........................................................................ 25, 26

# TABLE OF AUTHORITIES (continued)

*Page(s)*

*S. Cal. Gas Co. v. City of Santa Ana*,
  336 F.3d 885 (9th Cir. 2003) .................................................................. 28

*Sandquist v. Lebo Auto., Inc.*,
  1 Cal. 5th 233 (2016) ............................................................................. 22

*Shivkov v. Artex Risk Solutions, Inc.*,
  974 F.3d 1051 (9th Cir. 2020) .......................................................... Passim

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ........................................................... 17, 23

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) .......................................................................... Passim

*Taylor v. Yee*,
  780 F.3d 928 (9th Cir. 2015) ................................................................... 9

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
  925 F.2d 1136 (9th Cir. 1991) ............................................................... 16

*Toyo Tire Hldgs. of Am., Inc. v. Cont'l Tire N. Am., Inc.*,
  609 F.3d 975 (9th Cir. 2010) ...................................................... 22, 23, 24

*U.S. ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
  871 F.3d 791 (9th Cir. 2017) ................................................................. 28

*Valley View Health Care, Inc. v. Chapman*,
  992 F. Supp. 2d 1016 (E.D. Cal. 2014) .................................................. 21

*Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
  489 U.S. 468 (1989) ..................................................................... 18, 24, 25

## Statutes

9 U.S.C. § 16(a)(3) ..................................................................................... 4
15 U.S.C. § 1693 ........................................................................................ 3
28 U.S.C. § 1291 ........................................................................................ 4
28 U.S.C. § 1331 ........................................................................................ 3

# TABLE OF AUTHORITIES (continued)

*Page(s)*

28 U.S.C. § 1367(a) ................................................................................. 3
28 U.S.C. § 2201 ..................................................................................... 3

**Rules**

Federal Rules of Appellate Procedure Rule 32(a)(6) .............................. 42
Federal Rule of Appellate Procedure 32(a)(7)(B) ................................... 42
Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) ............................ 42
Federal Rule of Appellate Procedure 32(a)(7)(C) ................................... 42
Federal Rule of Civil Procedure 12 .......................................................... 9
Federal Rule of Civil Procedure Rule 12(b) ........................................... 13
Federal Rule of Civil Procedure Rule 12(b)(1) or 12(b)(6) ................... 13
Federal Rule of Civil Procedure Rule 12(b)(3) ...................................... 13
Federal Rule of Civil Procedure Rule 32(a)(5) ....................................... 42
Ninth Circuit Rule 28 .............................................................................. 41

**Other Authorities**

AAA, Consumer Arbitration Rules (Nov. 1, 2020) ............................... 6, 7, 8
AAA, Supplementary Rules for Multiple Case Filings (Aug. 1, 2021) .............. 8
5C Fed. Prac. & Proc. Civ. § 1360 (3d ed.) .......................................... 13
Restatement (Second) of Contracts § 204 (Am. Law. Inst. 1979) ......... 32

**INTRODUCTION**

This appeal arises from Wells Fargo Bank's broken promises. When Appellants opened consumer checking accounts, they agreed to terms requiring them to waive their rights to sue in court—including their right to participate in litigation—and proceed instead to individual arbitration. According to Wells Fargo, bilateral arbitration was necessary for Appellants to obtain a more timely and efficient outcome than litigation.

When disputes arose from Wells Fargo's overdraft fee practices, Appellants sought the bilateral arbitrations they were promised. But what they did not know was Wells Fargo considered the arbitration agreement a mere pretext. Faced with only a few thousand arbitrations filed by a small percentage of its customers, Wells Fargo adopted scorched-earth practices to prevent any arbitrations from proceeding. To achieve this goal, Wells Fargo's strategy was to adopt a tack it would deem abhorrent if the roles were reversed—the advocacy of class-wide procedure to obtain collective relief. By manipulating these thousands of individual arbitrations into a single quasi-class, Wells Fargo stopped them in their tracks.

Given Wells Fargo's arbitration embargo, Appellants had no choice but to seek relief in federal court, relying upon an express contractual provision permitting lawsuits for injunctive relief. But the district court overlooked Wells

Fargo's blatant abuses of process to hold that Appellants had no choice but to have their substantive rights mangled in a simulacrum of dispute resolution.

The Ninth Circuit can, and should, put a stop to all of this. First, the district court misinterpreted the parties' arbitration agreement by holding that it barred Appellants from suing for injunctive relief. The agreement plainly says otherwise. Next, even though the district court ignored the agreement's plain language to bar Appellants' lawsuit, it relied at the same time on ambiguous language to hold that Wells Fargo had demonstrated "clear and unmistakable" evidence of the parties' delegation of threshold arbitrability issues. This conclusion was not supported by the arbitration agreement or rules of contract interpretation either.

Third, the district court erred by reducing Appellants' rights to an analysis reducing those rights to a mere dichotomy of "procedure" and "substance." The United States Supreme Court has carved a friendly policy road for consumer arbitration, but part of doing so means that class-wide procedures must be halted when they interfere with contractual promises. The only difference between this case and other similar challenges is that individual consumers are enforcing their contractual rights against a well-heeled corporate defendant, not the other way round.

And finally, the district court erred by returning Appellants to arbitration because the underlying arbitration order was not "final and binding." The parties

agreed that it is final and binding, which should have been sufficient to satisfy the review standard. But the order's substantive effect is also final. The harm has been done and it is past time for Appellants to obtain relief.

If permitted to stand, the district court's order would obscure a troubling, all-too-common reality in modern arbitration. If FAA "policy" is to encourage arbitration, and it is the foundational pretext upon which generations of future consumers must proceed to arbitration to obtain relief, then the least consumers can ask is that it facilitate arbitration proceedings. As it stands, corporate defendants like Wells Fargo cynically use arbitration to bury legal challenges to their corporate autonomy. In the face of Wells Fargo's manipulation, judicial claims of powerlessness certainly don't derive for federal law or policy. The district court's decision is incompatible with the FAA, legal precedent, and fundamental principles of contract interpretation. If arbitration is to have a future as something other than a modern-day Star Chamber useful for corporate defendants to abuse secret process, the district court should be reversed and the case remanded with direction to reconsider Appellants' claims and remedies.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 1693, 28 U.S.C. § 1367(a), and 28 U.S.C. § 2201. On May 1, 2023, it issued an order granting Wells Fargo's motion to compel, denying Appellants' motion for a

preliminary injunction as moot, and dismissing their Complaint. *See* 1-ER-2–10. Appellants filed a notice of appeal on May 26, 2023. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(3).

## STATEMENT OF THE ISSUE

1.      Whether the district court erred by concluding that the first cause of action, seeking injunctive and declaratory relief and alleging Wells Fargo violated the parties' arbitration agreement by imposing class-wide procedures and preventing the efficient individual arbitration guaranteed in the arbitration agreement, was within the scope of the parties' arbitration agreement.

2.      Whether the district court erred by concluding that the arbitration agreement clearly and unmistakably delegated all issues of arbitrability to the arbitrator.

3.      Whether the district court erred by finding it had no jurisdiction to review the order of the Process Arbitrator entered on October 27, 2022 (the "PA Order")[1] because it was not "final and binding," but "procedural" in nature.

---

[1] For the sake of consistency with the district court, Appellants refer to the Process Arbitrator's October 27, 2022 Order as the "PA Order."

4

## STATEMENT OF THE CASE

**I**     **Background of the Litigation**

This litigation arises from the arbitration agreements Wells Fargo unilaterally imposes upon consumers who open a checking account. Through the arbitration agreement, Wells Fargo requires consumers to waive their right to participate in litigation, including class action litigation, and instead seek dispute resolution through individual, bilateral arbitration. 2-ER-65. Consistent with the Arbitration Agreement, Appellants submitted their claims to AAA in the first instance. 2-ER-117–165.

But the proceedings quickly became a misnomer; they did not proceed. Wells Fargo proved willing to fight to the last tooth and nail not only to defeat Appellants' claims but prevent them from ever being heard. Appellants' mere submission of arbitration demands equated to a declaration of war, with Wells Fargo refusing to facilitate the bilateral arbitration it earlier promised. And when Appellants turned to the district court for relief, it ordered them to return to the same arbitration proceedings where Wells Fargo had already trampled their rights—an entirely, but unnecessarily, circular resolution. To understand how and why the district court went wrong, it is vital to understand why Appellants filed these claims in federal court in the first place.

## A.    Wells Fargo Imposes the Arbitration Agreement upon Consumers

Wells Fargo offers banking services to everyday consumers. *See* 2-ER-65–66; 2-ER-70. Before consumers open a checking account, they must agree to the Deposit Account Agreement, the terms Wells Fargo adopts to govern those accounts. *See generally* 2-ER-30–70. The Deposit Account Agreement incorporates a consumer-specific arbitration agreement ("Arbitration Agreement"), which required the parties to submit claims to the American Arbitration Association ("AAA") for administration under the AAA's Consumer Arbitration Rules ("Consumer Rules"). 2-ER-65–66.

In the Arbitration Agreement, Wells Fargo promised that arbitration would resolve disputes "as quickly and easily as possible" and in a "more streamlined, cost-effective manner than a typical court case." 2-ER-65. Claiming that consumer waivers were crucial to capturing a complete range of arbitration's benefits, Wells Fargo forced consumers to waive all rights to participate in litigation, as well as class or collective action in any forum, including arbitration. 2-ER-65.

But the Arbitration Agreement did not funnel all claims to arbitration. It included a carve-out entitled "Additional Dispute Resolution," which permitted the parties to seek "provisional and ancillary remedies such as injunctive relief" in a "court of competent jurisdiction." 2-ER-66.

## B.      Appellants File Individual Arbitration Demands

Each Appellant served AAA with a demand alleging that Wells Fargo unlawfully charged them overdraft fees in violation of Regulation E of the Electronic Fund Transfer Act, unlawful and unfair business practices barred by California's Unfair Competition Law, and/or breached the terms of the Deposit Account Agreement. *See* 2-ER-116–165. Appellants' claims are a few of thousands of similar demands served against Wells Fargo since early 2022. Even today, few, if any, of these claimants have been assigned an arbitrator or a hearing date. *See* 2-ER-229–230.

Each Appellant's arbitration demand followed the AAA's filing requirements set forth in Consumer Rule 2.[2] *See* 2-ER-116–165. And the AAA subsequently noticed each Appellant that their claims complied with the filing requirements, initiating their arbitration proceedings. 2-ER-166–178.

---

[2] To satisfy Rule 2, a demand must (1) briefly explain the dispute; (2) list the names and addresses of the consumer and the business, and, if known, the names of any representatives of the consumer and the business; (3) specify the amount of money in dispute, if applicable; (4) identify the requested location for the hearing if an in-person hearing is requested; and (5) state the claimant's desired relief. AAA Consumer Arbitration Rule 2(a)(1) (2014); *see* 2-ER-82–94.

**C.     The Parties Agree To Supplemental Rules To Resolve The Mass Arbitration Filings**

Appellants and Wells Fargo agreed to apply the AAA's new Supplementary Rules for Multiple Case Filings ("Supp. Rules") to facilitate resolution of the demands against Wells Fargo. 2-ER-14–15. Like the Arbitration Agreement, the MCF Rules promised to "streamline the administration of large volume filings" involving the same parties. 2-ER-182.

But nothing in the MCF Rules could trump the Arbitration Agreement, which still obliged the parties to participate in individual arbitration proceedings. 2-ER-66. Indeed, no conflict existed on paper between these various documents because the AAA's stated purpose for the MCF Rules was to provide "an efficient and economic path toward resolution of multiple *individual* disputes." Supp. Rules at Introduction (emphasis added).[3]

The Supplementary Rules' main feature is to bifurcate the arbitration process. A "Process Arbitrator" decides "administrative issues," after which its decisions are "final and binding upon the parties and Merit Arbitrator(s)." Supp. Rule MC-6. After the "administrative issues" are resolved, the appointed Merits

---

[3] 2-ER-182. Under Supplementary Rule MC-2, in order to file a demand, "the filing party shall adhere to the filing requirements set forth in the applicable rules." As such, at all relevant times, the filing requirements under AAA Consumer Rules, Rule 2, are applicable to Appellants' demands. *See* 2-ER-184; *see also* 2-ER-82–84.

Arbitrators hold bilateral proceedings and resolve the individual cases on their merits. Supp. Rule MC-6, 7; *see* 2-ER-185–187.

### D. Wells Fargo Imposes Class-wide Procedures in Violation of the Agreement

Though the Process Arbitrator was supposed to expedite individual arbitrations, Wells Fargo saw an opportunity to game the system. After the Process Arbitrator's appointment, Wells Fargo abandoned any pretense that it would pursue individual arbitrations. Instead, it looked to convert the bilateral arbitration process into a class arbitration process. The primary vehicle for its scheme was to advocate that the AAA should hold all claimants to a special pleading standard, one higher even than the FRCP 12 "plausibility" standard.[4] But Wells Fargo did not stop there, demanding that all past, present, and future claimants satisfy the higher standard before the AAA would even process a demand. 2-ER-229–230.

---

[4] *See* 2-ER-191. Wells Fargo demanded that each demand include: "1) Claimant's Wells Fargo account number for the account at issue, 2) facts to establish each Claimant was enrolled in DCOS during the time period at issue and 3) facts sufficient to establish that each Claimant incurred overdraft fees in connection with transactions covered by Regulation E" as well as "Amended Claims specifying which state laws have been violated … [and] … the specific amount of overdraft fees each Claimant was wrongly charged." *Id.* By contrast, the Rule 12 standard requires a plaintiff to "allege 'enough facts to state a claim to relief that is plausible on its face.'" *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The AAA played Wells Fargo's tune. The Process Arbitrator issued the PA Order, imposing Wells Fargo's proposed heightened pleading requirements just as Wells Fargo had planned, requiring every demand to include: "1) Claimant's Wells Fargo account number for the account at issue, 2) facts to establish each Claimant was enrolled in DCOS during the time period at issue and 3) facts sufficient to establish that each Claimant incurred overdraft fees in connection with transactions covered by Regulation E." 2-ER-190–191. More remarkable still, Wells Fargo managed to grind the arbitration proceedings to a halt merely by demanding that claimants plead information entirely in Wells Fargo's possession already.

The Process Arbitrator did not stop there, also suspending all of Wells Fargo's obligations to pay promised filing fees for all individual claimants, including Appellants. 2-ER-191. Without fees, the arbitrations could not progress because no merits arbitrators would be assigned to hold bilateral hearings *See* Supp. Rules MC-7, 10. And now, even as Wells Fargo consumers continue to submit demands, AAA rejects them by claiming they have not satisfied the PA Order's arbitrary pleading requirements. 2-ER-201. Through all of this, AAA has never claimed, much less demonstrated, that a single demand has ever failed to

satisfy AAA pleading rules.[5] *Id.* The only source of authority for rejecting these demands for processing is the PA Order.

The situation has worsened since the district court dismissed Appellants' case. After delaying claimants' demands, many for over a year, the Process Arbitrator now has ordered that any demand not amended to satisfy these elevated pleading requirements by August 14, 2023, will be dismissed without a substantive hearing. Of course, no contract or AAA rule permits the Process Arbitrator to dismiss any claims on substantive grounds. *See* Supp. Rule MC-6; 2-ER-185–186.

## II    Proceedings in the District Court

### A.    The Lawsuit

After being stalled for months by Wells Fargo's ersatz form of dispute resolution, Appellants filed suit in the district court alleging that Wells Fargo had breached the Arbitration Agreement. 2-ER-205–236. In their first cause of action, Appellants alleged that Wells Fargo had breached by substituting class-wide arbitration procedures for the promised bilateral arbitrations the Arbitration Agreement required. 2-ER-230–231. In their second and third causes of action,

---

[5] Wells Fargo misled both the Process Arbitrator and the district court by highlighting authorization forms sent by Appellants' counsel to Wells Fargo that lacked relevant information, like bank account numbers. But these forms are not the arbitration demands filed with AAA, but requests to Wells Fargo for electronic copies of Appellants' personal banking records. *See* 2-ER-17–19. Appellants' counsel sent these forms to Wells Fargo to request individual banking records, requests which Wells Fargo rejected as a class.

they repeated the substantive claims against Wells Fargo that they described in their arbitration demands. 2-ER-232–234.

Appellants also moved to for a preliminary injunction against the PA Order, pending resolution of the issues raised by their first cause of action. On the other hand, Wells Fargo asked the district court to compel Plaintiffs back to arbitration and dismiss the Complaint, whether on jurisdictional or merits grounds.

## B.    The District Court's Decision

The district court decided the motions without the benefit of hearings (evidentiary or otherwise) or oral argument. *See* 2-ER-12. It granted Wells Fargo's motion to compel arbitration, denied Appellants' motion for preliminary injunction as moot, and dismissed the Complaint without prejudice. 1-ER-10. It concluded that the parties had "clearly and unmistakably" delegated all "gateway" issues to the arbitrator. 1-ER-6–8.[6] Further, though the Arbitration Agreement contained a carve-out provision permitting Appellants to seek "provisional and ancillary remedies such as injunctive relief" in a "court of competent jurisdiction," the

---

[6] According to these selections, a "dispute ***is*** any disagreement between Wells Fargo and you," but it "***may*** include a disagreement about this Arbitration Agreement's meaning application, or enforcement." 1-ER-7 (emphasis added); *see* 2-ER-65. Alternatively, an arbitrator will decide whether the agreement is enforceable, "[i]f this Arbitration Agreement is in dispute." 1-ER-7; *see* 2-ER-66.

district court circumvented that provision by limiting it only to pursuing "interim relief to preserve the status quo." 1-ER-6.

The district court also concluded it lacked authority to review the PA Order because it was not "final and binding," but "a procedural order" addressing "claim filing requirements in the MCF." 1-ER-9. It rejected Appellants' argument that the PA Order "directly impact[ed]" Appellants' rights to arbitrate by "requir[ing] information at the pleading stage that [Appellants] are unable to obtain."[7] Instead, it concluded that Appellants could provide the required information because they had already "provided the information required by the PA Order in the subject Complaint." 1-ER-9. But the district court relied on no factual support for these conclusions, only Wells Fargo's unsupported arguments from its briefs.[8] Moreover,

---

[7] 1-ER-9. Notably, the district court did not address the argument addressing the other side of the same coin: The PA Order requires Plaintiffs to plead information already completely within Wells Fargo's possession.

[8] 1-ER-9. Courts within the Ninth Circuit analyze motions to compel arbitration under the same standard as Rule 12(b) motions. *See* Preliminary Motions Not Enumerated in Rule 12(b), 5C Fed. Prac. & Proc. Civ. § 1360 (3d ed.) (motions to compel are encompassed by Rule 12(b); *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th Cir. 2009) (analyzing motion to compel arbitration pursuant to Rule 12(b)(3); *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 831, 938 (D. Ariz. 2011) (motion to compel arbitration may be brought pursuant to Rule 12(b)(1) or 12(b)(6)); *De Salles v. Cook*, 2016 WL 9113995, at *4 (C.D. Cal. May 12, 2016) ("While Rule 12(b) does not expressly contemplate motions to compel arbitration, courts generally treat such motions as preliminary motions rather than responsive pleadings.").

the district court did not analyze whether the PA Order was consistent with Wells Fargo's promises of bilateral arbitration.

Finally, the district court refused to review the PA Order because "it is well-settled that questions of procedure are not reviewable by courts." 1-ER-9. It concluded that the PA Order "deals with procedure, namely pleading and filing requirements, to provide an orderly process for the MCF—all based on [the PA's] interpretation of the Supplementary Rules to which the parties agreed." 1-ER-9–10.

## **SUMMARY OF THE ARGUMENT**

The district court compelled the Complaint to arbitration without distinguishing between its distinct causes of action. 1-ER-9. Appellants' first cause of action alleged that Wells Fargo breached the arbitration agreement and sought injunctive and declaratory relief. 2-ER-230–231. Whether that cause of action should be arbitrated comes down to the contract's carve-out provision, which expressly reserves matters of injunctive and declaratory relief for decision by a "court of competent jurisdiction." 2-ER-66. The district court disagreed but relied on cases that are readily distinguishable.

The district court also erred by concluding that the arbitration agreement "clearly and unmistakably" delegated decisions about arbitrability. 1-ER-6–8. Without an express delegation clause to rely upon, the district court cobbled

together vague and contradictory language, none of which directly addressed delegation of the arbitrability question. The district court's conclusion. turned the "clear and unmistakable" standard on its head.

Further, the district court misconstrued the PA Order by holding that it merely governed procedural requirements. *See* 1-ER-8–10. But this holding ignored the PA Order's substance and its impact. The substance of the order combines individual rights and purports to resolve them on common grounds. And its impact is to alter the contractual rights of Appellants and other claimants while preventing the bilateral arbitrations they were promised. As per the Arbitration Agreement, a court of "competent jurisdiction" not only can provide a substantive remedy for these violations, it should do so forthwith. *See* 2-ER-66.

## **STANDARD OF REVIEW**

The Court reviews a district judge's order to compel arbitration *de novo*.[9] The district court's factual findings are reviewed for clear error, and the interpretation and meaning of contract provisions are reviewed de novo.[10]

A motion to compel may not be granted solely on the papers where a genuine dispute of material fact exists regarding the agreement's execution or its

---

[9] *See Shivkov v. Artex Risk Solutions, Inc.*, 974 F.3d 1051, 1058 (9th Cir. 2020).

[10] *See Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

ability to bind the parties.[11] A "genuine dispute" exists where "a reasonable jury" could take the nonmoving party's view, and a fact is "material" if it "might affect the outcome."[12]

## ARGUMENT

**I**   **Appellants' Breach of Contract Claims Should Not Be Compelled To Arbitration**

The district court failed to evaluate Appellants' first cause of action seeking relief from Wells Fargo's violations of the Arbitration Agreement. Further complicating that error, the district court improperly limited the scope of the judicial remedies available through the Arbitration Agreement's carve-out provision, substituting its own policy preferences for the plain language of the agreement.

### A.   The District Court Erred In Compelling The First Cause of Action To Arbitration

The district court's primary error was compelling Appellants' first cause of action to arbitration. To determine whether an issue falls within the scope of an arbitration agreement, courts "must examine the factual allegations raised to

---

[11] *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991).

[12] *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

determine which … causes of action are arbitral."[13] An issue can be compelled to arbitration only if the "nature of the claim" "touch[es] matters" the agreement covers.[14]

Here, the district court overstepped by dismissing the entire Complaint in favor of arbitration. Yes, the second and third causes of action re-allege the substantive claims Appellants sought relief for in their arbitration demands. 2-ER-232–235. But the first cause of action addresses Wells Fargo's breach of the Arbitration Agreement itself, and the declaratory and injunctive relief Appellants seek as a result. 2-ER-230–231. This claim did not go "directly to the merits of a dispute already submitted to arbitration." 1-ER-8. It is independent from Appellants' substantive allegations regarding overdraft fees.

Ultimately, the district court's decision to return Appellants to arbitration ignores the problem. They tried arbitration, but Wells Fargo refused to meet them in kind. So, their only choice was to vindicate their contractual rights here.

---

[13] *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999); *see also Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101 (9th Cir. 2023).

[14] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985); *see Jackson*, 65 F.4th at 1104 ("[E]ven under broad arbitration clauses … factual allegations must at least 'touch matters' covered by the contract containing the arbitration clause . . .") (quoting *Simula*, 175 F.3d at 721).

## B.     The Arbitration Agreement Exempted the First Cause of Action

While the FAA favors arbitration, it does not "prevent parties … from excluding certain claims from the scope of their arbitration agreement[.]"[15] Here, the Arbitration Agreement contains an unambiguous carve-out provision, the interpretation of which is governed by state contract law.[16]

Carve-out clauses within broader arbitration agreements are not novel, and courts have long recognized their limiting effects.[17] Like any contract term, a carve-out can exempt specific claims or remedies depending on its terms.[18] The

---

[15] *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). Courts must "look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014) ("If the parties contest the scope of an arbitration agreement, [courts] must determine whether the *scope* of the agreement covers the relevant dispute.") (emphasis in original).

[16] *See* 2-ER-66; *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Goldman,* 747 F.3d at 743.

[17] *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1076–77 (9th Cir. 2013) (exempting "any disputes relating to Intellectual Property Rights" from arbitration); *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 280 (5th Cir. 2019) (*Schein*); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010 (2d Cir. 2014).

[18] *See, e.g.*, *Oracle*, 724 F.3d at 1071 (exempting "any disputes relating to Intellectual Property Rights"); *Schein*, 935 F.3d at 280 (exempting "actions seeking injunctive relief"); *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1253–54 (N.D. Cal. 2019) (exempting "any dispute relating to or arising out of" class action waiver).

Ninth Circuit routinely applies general rules of contract interpretation to interpret carve-out provisions. In *Mohamed v. Uber Technologies*, *Inc.*, for example, it considered two separate carve-out provisions in Uber's arbitration agreements with its drivers, one a 2013 agreement and an amended agreement in 2014.[19] While the 2014 agreement reserved all disputes to the arbitrator's oversight, the 2013 agreement included a class action waiver stating:

> Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver … in invalid, unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.[20]

As a result, the court held that the 2013 agreement delegated questions of arbitrability "to the arbitrator *except* as pertains to the arbitrability of class action, collective, action, and representative claims."[21] Therefore, the court's role was to decide the arbitrability question for those governed by that agreement.

The Fifth Circuit also recently interpreted a similar carve-out provision exempting actions seeking a specific remedy (i.e., injunctive relief), as opposed to

---

[19] 848 F.3d 1201, 1209 (9th Cir. 2016).

[20] *Id.* at 1208.

[21] *Id.* (emphasis in original).

disputes related to a specific subject matter.[22] It interpreted the clause straightforwardly, refusing to impose limits otherwise unsupported by the text.[23] As a result, it rejected the defendant's argument to "limit the [carve-out] to 'actions *only* seeking injunction relief' nor 'actions for injunction in aid of an arbitrator's award.'"[24] The court permitted the plaintiffs to proceed in federal court seeking injunctive relief and damages under state and federal antitrust law.[25]

The district court's comparatively narrow interpretation of this carve-out provision was reversible error. As written, the provision broadly allows either party to "exercise *any lawful rights* or use *other available remedies*" to "obtain

---

[22] *See Schein*, 935 F.3d at 277 (exempting "actions seeking injunctive relief"); *cf. Mohamed*, 848 F.3d at 1207 (exempting disputes related to class action waiver).

[23] And Wells Fargo is not alone. As class-action and class-arbitration waivers become ubiquitous in adhesive contracts, corporate defendants argue to interpret them broadly as it suits them. *See McClenon v. Postmates Inc.*, 473 F. Supp. 3d 803, 811 (N.D. Ill. 2020) (discussing Postmates argument that carve-out provision to class-action waiver must be interpreted broadly); *Adams,* 414 F. Supp. 3d at 1253 (same).

[24] *Schein*, 935 F.3d at 283.

[25] *Id.* at 283–84 (citing *Waffle House*, 534 U.S. at 294 ("[W]e do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.")).

provisional and ancillary remedies."[26] Among the available remedies is "injunctive relief" in a "court of competent jurisdiction."[27] This language is straightforward.

Nor is the provision's breadth an accident. Wells Fargo, the drafter, included it for the self-interested purpose of preserving its *own* access to the courts. Indeed, Wells Fargo has argued that it can file lawsuits against customers for any number of reasons, such as preventing the loss of assets before and during arbitration, enforcing judgments, and securing property after arbitration. Only now that Appellants use the carve-out to similar effect does Wells Fargo counter with these unsupported interpretations.[28] If Wells Fargo had intended to limit the parties as it

---

[26] 2-ER-66; *see Valley View Health Care, Inc. v. Chapman*, 992 F. Supp. 2d 1016, 1042 (E.D. Cal. 2014) (granting declaratory relief to "remove[] uncertainty as to viability and enforcement of challenged arbitration laws"); *Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*, No. 22-CV-00064-LK, --- F. Supp. 3d ---, 2023 WL 372381, at *8 (W.D. Wash. Jan. 24, 2023) (exempting "equitable relief – including, without limitation, claims for declaratory or injunctive relief"); *see also Suit*, Black's Law Dictionary (11th ed. 2019) (defining "ancillary suit," as "[a]n action, either at law or in equity, that grows out of and is auxiliary to another suit and is filed to aid the primary suit").

[27] 2-ER-66; *see Magill v. Wells Fargo Bank, N.A.*, No. 4:21-CV-01877 YGR, 2021 WL 6199649, at *4 (N.D. Cal. June 25, 2021) (recognizing carve-out provided "that a state or federal court with jurisdiction exceeding a small claims court would resolve at lease *some* disputes").

[28] And Wells Fargo is not alone. As class-action and class-arbitration waivers become ubiquitous in adhesive contracts, corporate defendants argue to interpret them broadly as it suits them. *See McClenon*, 473 F. Supp. 3d at 811 (discussing Postmates argument that carve-out provision to class-action waiver must be interpreted broadly); *Adams*, 414 F. Supp. 3d at 1253 (same).

argues, it would have done so.[29] Having imposed the Arbitration Agreement upon Appellants (and others), Wells Fargo cannot now re-write it to impose new, unspoken terms.[30]

### C. The District Court Misapplied the Law to Limit the Carve-Out Provision

The district court has not interpreted the Arbitration Agreement, so much as rewritten it. Instead of permitting Appellants to seek injunctive relief as the text allows, the provision now permits lawsuits only "if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process."[31]

The district court's analysis necessitates the inference that *Toyo* imposes a kind of blanket rule limiting injunctive relief to preservation of the status quo. It does no such thing. *Toyo* interpreted a specific carve-out described in Article 23 of

---

[29] *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019); *see also Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 248 (2016) (resolving ambiguities in arbitration agreement against the drafter consistent with general principle of contract interpretation).

[30] *See Schein*, 935 F.3d at 282–83; *Maguire Ins.*, 2023 WL 372381, at *8.

[31] *See* 1-ER-7 (citing *Toyo Tire Hldgs. of Am., Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010)). Again, the plain language does not support that interpretation. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms"); *see also Schein*, 935 F.3d at 282–83; *Maguire Ins.*, 2023 WL 372381, at *8.

the Rules of Arbitration of the International Chamber of Commerce ("ICC Rules").[32] Article 23 allows parties to seek "interim or conservatory measures" prior to arbitration.[33] The limitations imposed in *Toyo* derived from the contract's language, not a blanket limit on courts issuing injunctive relief in cases governed by arbitration agreements.[34]

This case does not involve the same carve-out as *Toyo* or *Capriole*. If anything, the language is closer to the language the Fifth Circuit refused to read narrowly in *Schein*.[35] Here, the Arbitration Agreement provides no limit on

---

[32] 609 F.3d at 978–79; *see Simula*, 175 F.3d at 725-26 (interpreting Article 23).

[33] *Toyo,* 609 F.3d at 980–81. Thus, it empowers courts only to "issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process. *Id.* at 981.

[34] *See Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 867 (9th Cir. 2021) (noting that *Toyo* "address[ed] whether Article 23(2) allows a federal court to provide any injunctive relief"). At issue in *Capriole* was the scope of injunctive relief available under an arbitration agreement between Uber and its drivers. *Id.* at 868–69. The relevant carve-out was similar in nature to the clause used in *Toyo*. Therefore, the court held that Uber's provision "parallel[ed] Article 23 of the ICC Rules, authorizing courts to grant interim relief but strictly limiting it to measures that preserve the status quo." *Id.* at 868. Therefore, the *Toyo* limitation applied. *Id.* ("[A]s in *Toyo*, Uber's Arbitration Provision covers requests for emergency relief …only if necessary to 'preserve the status quo'") (citing *Toyo*, 609 F.3d at 981).

[35] *See Schein*, 935 F.3d at 283 (interpreting carve-out provision excepting "actions seeking injunctive relief" from arbitration).

injunctive remedies that "maintain the status quo" or prevent ineffectual awards.[36]

Instead, it broadly allows "provisional and ancillary remedies such as injunctive relief" from a "court of competent jurisdiction."[37] By relying on *Toyo*,[38] the district court failed to interpret the Arbitration Agreement on its own plain terms.[39]

---

[36] *See id.* (refusing to limit carve-out for "actions seeking injunctive relief" to relief to "preserve the status quo pending arbitration of on a permanent basis after the plaintiff secures an arbitration award"); *cf. Capriole*, 7 F.4th at 867 (limiting carve-out clause for injunctive relief "*only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief*"); *Toyo*, 609 F.3d at 980–81 (allowing only "interim or conservatory measures").

[37] 2-ER-66. There is no need to parse whether injunctive relief is a "provision and ancillary remedy." The parties agreed to define it as such. 2-ER-66 (authorizing parties to "obtain provisional and ancillary remedies *such as injunctive relief*") (emphasis added); *Volt Info.*, 489 U.S. at 478 (courts enforce arbitration agreements "according to their terms … [to] give effect to the contractual rights and expectations of the parties"). And this is a contract of adhesion, not a negotiated agreement between sophisticated parties. Any reasonable individual under the circumstances would conclude that this language addressed a broad right to seek injunctive relief. If Wells Fargo had some undisclosed understanding of the clause, that does not matter to its interpretation. *See Schein*, 935 F.3d at 282–83.

[38] Notably, the *Toyo* limitation only applies to "arbitral" disputes in the first place. But the first cause of action here is not, and never was, arbitrable because the Arbitration Agreement expressly carved it out.

[39] *See Maguire Ins.*, 2023 WL 372381, at *8 (citing *Schein*, 935 F.3d at 282–83); *see also Concepcion*, 563 U.S. at 339.

**II**   **The Arbitration Agreement Did Not "Clearly and Unmistakably"**

**Delegate Arbitrability**

The FAA's "foundational" principle is that "arbitration is strictly a matter of consent."[40] Though the FAA promotes arbitration as a matter of policy, it does not do so by undoing private agreements. Therefore, arbitration agreements are "enforced *according to their terms*."[41] A court must "give effect to the intent of the parties" in this, as in every other, contractual context.[42]

The arbitrability question dictates who decides threshold issues. And absent "clear and unmistakable" evidence to the contrary, arbitrability decisions are presumptively reserved to the courts.[43] This "heightened standard" is an "interpretive rule, based on an assumption of the parties' expectations."[44] Silence

---

[40] *Lamps Plus*, 139 S. Ct. at 1415.

[41] *Volt Info.*, 489 U.S. at 478 (emphasis added).

[42] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).

[43] *See Kaplan*, 514 U.S. at 946; *Oracle*, 724 F.3d at 1072.

[44] *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010) (internal quotations omitted).

or ambiguity are insufficient. Only express evidence that "admit[s] of no other reasonable interpretation" satisfies this standard.[45]

## A. Wells Fargo Failed to Unambiguously Delegate Arbitrability to the Arbitrator

The Arbitration Agreement does not establish the parties' "clear and unmistakable" intent to delegate arbitrability questions. Indeed, it contains no delegation clause at all, though Wells Fargo drafted it.[46] Express delegation clauses are a common—and simple—means of expressly delegating "threshold arbitrability questions as well as underlying merits disputes" to an arbitrator.[47] But

---

[45] *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148 (1982) (defining clear and unmistakable standard); *see also Kaplan*, 514 U.S. at 944–45; *Local Joint Exec. Bd. v. Mirage Casino-Hotel, Inc.*, 911 F.3d 588, 598 (9th Cir. 2018).

[46] *See* 2-ER-65–66; *Nelson v. Dual Diagnosis Treatment Ctr.*, 292 Cal. Rptr. 3d 740, 750 (Cal. Ct. App. 2022) (finding no clear and unmistakable delegation where "clause does not mention arbitrability, nor is it mentioned anywhere else in the agreement").

[47] *Schein*, 139 S. Ct. at 527; *see also Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022) (citing *Rent-A-Center*, 561 U.S. at 68–69).

the Arbitration Agreement says little, if anything, about delegation.[48] The absence of this language alone should have ended the analysis.[49]

Though the contract was silent on delegation, the district court substituted for express delegation a series of linguistic penumbras. *See* 1-ER-7–8. But even if one overlooked the absence of a true delegation clause, the district court's interpretation creates more questions than answers, particularly in light of the high standard required to defeat the presumption. This is because the district court reached several different conclusions about the scope of the alleged delegation.

At the outset, the district court concluded that the delegation was broad and absolute, encompassing "any unresolved disagreement" between the parties.1-ER-7, 2-ER-7. But shortly thereafter, it re-defined the delegation to be more conditional and limited.[50] And by the end of the district court's opinion, it

---

[48] *See* 2-ER-65–66; *see also Kaplan*, 514 U.S. at 944–45 (construing silence or ambiguity of arbitrability against delegation); *Mirage Casino-Hotel*, 911 F.3d at 598.

[49] *See Ajamian v. CantorCO2e*, 203 Cal. App. 4th 771, 792 (2012) ("The absence of such express language (or extrinsic evidence to the same effect) therefore gives rise to the inference that the parties did *not* consider [arbitrability].") (emphasis in original); *see also Meadows v. Dickey's Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1077–79 (N.D. Cal. 2015) (holding court must determine arbitrability where broad arbitration agreement lacked explicit delegation clause).

[50] 1-ER-7; *see also* 2-ER-7. ("A dispute *may* also include a disagreement about this Arbitration Agreement's meaning, application, enforcement.") (emphasis added); *see Gonzales v. Charter Comm'cns, LLC*, 497 F. Supp. 3d 844, 849 (C.D. Cal. 2020) (noting defendant's "broad[] interpretation, which calls for the delegation of

suggested that the delegation was issue-specific, confined to resolving questions about the Agreement's "enforceability" or its consistency with AAA rules.[51] But a clear and unmistakable delegation cannot amount to three separately defined delegations. And even if narrow threads of delegation happen to run through these clauses, they still must be interpreted as narrowly as possible.[52]

In light of the absence of any true delegation language in the agreement, Wells Fargo failed to satisfy the "clear and unmistakable" standard necessary to support the district court's conclusion that the parties had delegated questions of arbitrability.[53]

---

any gateway arbitrability issue whatsoever, fails to consider the more limited context of the language").

[51] *See* 1-ER-7; 2-ER-7 ("If the Arbitration Agreement is in dispute, the arbitrator will decide whether its enforceable."); *see also Gonzales*, 497 F. Supp. 3d at 849.

[52] *See U.S. ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 797 (9th Cir. 2017) ("the specific governs the general"); *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 891 (9th Cir. 2003) ("A standard rule of contract interpretation is that when provisions are inconsistent, specific terms control over general ones.").

[53] *See Mirage*, 911 F.3d at 598 (silence and ambiguity cannot commit questions of arbitrability); *see also Metro. Life Ins. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019) ("vague provisions as to whether the dispute is arbitral are unlikely to provide the needed clear and unmistakable inference of intent to arbitrate its arbitrability").

**B.     The Carve-Out Provision Undermines the Existence of a Broad Delegation**

But the Court need not only rely on the absence of a delegation clause. Any inferences regarding delegation from the plain language should be read to favor Appellants' position. First, the existence of the carve-out provision undermines the district court's finding of a broad delegation by demonstrating that the parties contemplated the courts taking an active role in resolving their disputes.[54] On the one hand, the carve-out provision expressly permits courts to grant injunctive relief. Wells Fargo argues that, on the other hand, the parties somehow negated that express mandate in favor of letting an arbitrator decide. But given the plain language, there is little reason to believe that the parties delegated these issues. Where the carve-out provision is so clear and unambiguous, it would take at least

---

[54] *See Jack v. Ring LLC*, A165103, A165386, --- Cal. Rptr. 3d ---, 2023 WL 3639767, at *5 (Cal. Ct. App. May 25, 2023) ("[T]he severability clause in this case very clearly contemplated that a court may decide whether the arbitration provision is enforceable when the provision is challenged based on the limitations of the [severability clause] itself. This uncertainty about who may decide such challenges means there is no clear and unmistakable delegation of the issue exclusively to arbitration."); *NASDAQ*, 770 F.3d at 1031–32 (concluding district court properly determined arbitrability where arbitration agreement "carves out certain issues from arbitration … until a decision is made as to whether a question does or does not fall within the intended scope of arbitration").

an express delegation clause to overcome the presumption.[55] But no such clause exists.

A finding of "clear and unmistakable" evidence is also dubious where the "broad arbitration clause is subject to a qualifying provision that at least arguably covers the present dispute."[56] Here, the carve-out provision permits "injunctive relief" in a "court of competent jurisdiction," and this is the relief Appellants seek.[57] Again, it makes little sense to expressly agree that injunctive claims may proceed in court, then presume that the parties implied a delegation of that exact question to an arbitrator.

---

[55] *See Bucsek*, 919 F.3d at 191 ("the clearer it is that the terms of the arbitration agreement reject arbitration of the dispute, the less likely it is that the parties intended to be bound to arbitration the question of arbitrability."); *Schein*, 935 F.3d at 281-82 ("Given that carve-out, we cannot say that the [Arbitration] Agreement evinces a "clear and unmistakable" intent to delegate arbitrability"); *Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930, 940–41 (N.D. Cal. 2015) ("While in isolation [the delegation clause] may appear clear, it is inconsistent with the severability clause … which states that 'any arbitrator *or court*' could declare of determine that a provision of the Agreement is invalid or unenforceable.") (emphasis in original) (citing *Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884, 889 (2008); *see also Ajamian*, 203 Cal. App. 4th at 792 ("Even broad arbitration clauses that *expressly* delegate the enforceability decision to arbitrator may not meet the clear and unmistakable test, where other language in the agreement creates an uncertainty in that regard.").

[56] *NASDAQ*, 770 F.3d at 1010.

[57] 2-ER-66; *see id.* at 1031 (finding no clear and unmistakable delegation where "broad arbitration clause is subject to a qualifying provision that at least arguably covers the present dispute"); *Magill*, 2021 WL 6199649 at *4.

The existing conflicts between the terms of the Arbitration Agreement and the implied delegation found by the district court are not "artificial" either.[58] The carve-out provision allows certain disputes to proceed *beyond* arbitration, including this precise dispute.[59] Because Wells Fargo could not possibly overcome the arbitrability presumption given this set of circumstances, the district court should have decided arbitrability.[60]

## III  The FAA Authorizes Judicial Review of the PA Order

The district court also erred by concluding that the PA Order was not "final and binding," but instead "procedural and not reviewable." *See* 1-ER-8–10. The court adopted a false binary by holding that "procedural" issues are not subject to judicial review. *See* 1-ER-9. Terms like "procedural" and "substantive" hold little weight; instead, courts must address the entirety of a situation to determine whether substantive rights have been violated.[61] Here, Appellants' substantive

---

[58] *See Mohamed*, 848 F.3d at 1209 (holding forum selection clause did not contradict express delegation clause).

[59] 2-ER-66; *see Cobarruviaz*, 143 F. Supp. 3d at 940–41; *Magill*, 2021 WL 6199649, at *4-5; *cf. Mohamed*, 848 F.3d at 1209.

[60] *See Nasdaq*, 770 F.3d at 1031–32; *Magill*, 2021 WL 6199649 at *4.

[61] *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 556 (1964) ("[D]isputes of the kind involved here cannot be broken down so easily into their 'substantive' and 'procedural' aspects. Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by

contractual rights were violated, and the district court has the authority to vindicate those rights, as it would if the shoe were on the other foot, and Wells Fargo was objecting to the imposition of class-wide arbitration procedures.

### A. Appellants' Substantive Contractual Rights Have Been Violated

The district court held that "it is well-settled that questions of procedure relating to arbitration are not reviewable by courts." 1-ER-9. But the distinction between procedural and substantive issues are never so clear as to be a bright line, and particularly not in this context.[62]

Nor is the district court's reasoning "well-settled." 1-ER-9. The Supreme Court has said that "*[i]n certain contexts* . . . procedural questions . . . are presumptively not for the judge, but for an arbitrator, to decide."[63] But this presumption only applies where an arbitrator is "implicitly authorize[d] . . . to adopt such procedures" by supplying undefined and inferred terms consistent with the background principals of contract law.[64]

---

it."); *Shivkov*, 974 F.3d at 1067 ("the relevant metric is not the labeling of a particular mechanism in federal court as "procedural," but rather the categories of gateway issues [that] determine whether an issue is presumptively for a court or an arbitrator to decide absent *further agreement* by the parties").

[62] *See infra* n.61.

[63] *Stolt-Nielsen*, 559 U.S. at 684–85 (emphasis added).

[64] *Id.* at 685 (citing Restatement (Second) of Contracts § 204 (Am. Law. Inst. 1979)); *see also McKesson Corp. v. Local 150 IBT*, 969 F.2d 831, 834 (9th Cir.

Particularly troublesome here is that the "procedural" question at issue—the imposition of class-wide procedures—is one uniquely associated with a federal court's powers, not an arbitrator's powers.[65] The Ninth Circuit, with at least seven other circuits, has "concluded that the availability of class arbitration is a gateway question for a court to presumptively decide."[66] Similarly, in *Stolt-Nielsen*, an AAA panel determined that an arbitration agreement had authorized class arbitration.[67] Subsequently, a district court vacated that award because it was in "manifest disregard of the law."[68] The Second Circuit reversed, but the Supreme Court concluded that parties cannot be forced to class arbitration absent an express agreement, and that the courts could intervene.[69] It vacated the arbitration award,

---

1992) (holding parties may "explicitly or implicitly" delegate procedural issues solely to arbitrator).

[65] *See Shivkov*, 974 F.3d at 1067.

[66] *Id.* at 1067–68; *see also 20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 718–19 (5th Cir. 2019); *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 506–07 (7th Cir. 2018); *JPay, Inc. v. Kobel*, 904 F.3d 923, 935–36 (11th Cir. 2018); *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972 (8th Cir. 2017); *Del Webb Cmtys, Inc. v. Carlson*, 817 F.3d 867, 873 (4th Cir. 2016); *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 334–35 (3d Cir. 2014); *Reed Elsevier, Inc. v. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 598–99 (6th Cir. 2013).

[67] *See* 559 U.S. at 668–70.

[68] *Id.* at 669.

[69] *Id.* at 670.

even though the imposition of class procedures is inarguably "procedural in nature," reasoning that an arbitrator imposing class or collective procedures does not presumptively reserve the power to impose, and thus has no ability to enforce, those procedures.[70] Put another way, both parties to an arbitration agreement have a substantive, enforceable contract right to bilateral arbitration.

The PA Order concerns the same "procedural" issues as *Stolt-Nielsen*—the non-consensual imposition of collective procedures to resolve individual claims.[71] The supposedly "procedural" decision to impose class or collective procedures is reviewable.[72] Indeed, unlike the agreements at issue in *Stolt-Nielsen* and *Lamps Plus*—both silent or ambiguous about class arbitration—the Arbitration Agreement expressly prohibits Appellants from class and collective procedures.[73] It is no little irony that Wells Fargo now claims they must abide by such procedures.

---

[70] *See id.* at 685 ("An implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate."); *see also Lamps Plus*, 139 S. Ct. at 1416 (concluding courts could review arbitration order imposing classwide arbitration).

[71] 559 U.S. at 685.

[72] *Id.*; *Shivkov*, 974 F.3d at 1067–68.

[73] 2-ER-65 ("Neither Wells Fargo nor you will be entitled to join or consolidate disputes by or against others as a representative or member of a class . . . ."); *see Stolt-Nielsen*, 559 U.S. at 673; *Lamps Plus*, 139 S. Ct. at 1417 (holding court cannot compel class wide arbitration where arbitration agreement is silent).

Moreover, the PA Order's effects—"shifting from individual to class arbitration" —constitutes a "fundamental change … that sacrifices the principal advantage of arbitration."[74] Of course, the PA Order does not expressly concede that it imposes "class procedures," but it bears the collective hallmarks of class arbitration.[75]

First, it prevents Appellants from obtaining the supposed benefits of bilateral arbitration.[76] The "switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment."[77] And here, the PA Order has not only ground the proceedings to a halt, but threatens to obliterate thousands of claims without even the semblance of a hearing.[78]

---

[74] *Id.* at 1414; *see Concepcion*, 563 U.S. at 348.

[75] *See Shivkov*, 974 F.3d at 1067 ("[T]he relevant metric is not the labeling of a particular mechanism in federal court as "procedural," but rather the categories of gateway issues [that] determine whether an issue is presumptively for a court or an arbitrator to decide absent *further agreement* by the parties.") (emphasis in original).

[76] *See Stolt-Nielsen*, 559 U.S. at 685.

[77] *Concepcion*, 563 U.S. at 348; *see also Catamaran*, 864 F.3d at 971.

[78] 2-ER-190–191; *Concepcion*, 563 U.S. at 349 (noting that the AAA Supplementary Rules for Class Arbitration "mimic the Federal Rules of Civil Procedure for class litigation).

Second, the PA Order hinders the parties' ability to maintain confidentiality, another hallmark of individual arbitration.[79] To comply with the PA Order, the Process Arbitrator recommended producing a spreadsheet of all claimants' personal information—including their bank account numbers and other identifying information.[80] Exposing sensitive information through joint procedures sacrifices these considerations, and for no reason to boot, since Wells Fargo already has the information in its possession.

Third, the PA Order brings the high stakes of class-action litigation into arbitration while lacking substantive safety nets, including (but not limited to) appellate review.[81] Without the availability of appellate review, it is "more likely that errors will go uncorrected" and though parties may be willing "to accept the costs of these errors in arbitration, since their impact is limited to the size of individual disputes," the stakes are invariably higher in class litigation.[82] Indeed,

---

[79] *Stolt-Nielsen*, 559 U.S. at 686.

[80] *See* 2-ER-190–191 ("In lieu of filing and serving a separate Amended Claims for each Claimant, one spreadsheet signed by an attorney of record for Claimants may be filed and served for all Claimants if it includes the ordered information for each Claimant.").

[81] *Stolt-Nielsen,* 559 U.S. at 686-87.

[82] *Concepcion*, 563 U.S. at 350.

the PA Order now threatens to dispose of claims without permitting any kind of individualized hearing at all.

And finally, the PA Order has introduced troubling due process concerns in an otherwise straightforward dispute.[83] It imposes its reach not only upon pending claims, but any and all future claims brought after its entry. 2-ER-191. In short, the PA Order impacts the rights of future claimants without even an opportunity to be heard.[84] As a result, it "no longer purport[ed] to bind just the parties to a single arbitration agreement, but adjudicate[ed] the rights of absent parties as well."[85] At the very least, an absent party "must be afforded notice, an opportunity to be heard, and a right to opt out of the class."[86] The PA Order considered none of these matters, which is one more reason why enjoining its overreach is vital.

---

[83] *See Stolt-Nielsen,* 559 U.S. at 686.

[84] *See* 2-ER-190–191. ("The invoicing of AAA fees is stayed for all Claims that have not already been invoiced and for all new Claims filed with the AAA until the requirements . . . have been satisfied.").

[85] *Stolt-Nielsen,* 559 U.S. at 686; *see AT&T Mobility LLC v. Bernardi*, 11 Civ. 03992, 11 Civ. 04412, 2011 WL 5079549, at *7 (N.D. Cal. Oct. 26, 2011) (holding self-described individual arbitration constitutes "class proceeding" given impact on non-parties).

[86] *Concepcion*, 563 U.S. at 349.

The court's ability to intervene in these circumstances is straightforward. Appellants have the same substantive right to bilateral arbitration as Wells Fargo.[87] Indeed, if Wells Fargo and the AAA combine to undermine Appellants' substantive rights, the rich irony is that only Appellants are left to defend the FAA's "inherent" policy supporting bilateral arbitration.[88] This fundamental injustice must be remedied.

## B.     The Parties Agreed that the PA Order Was "Final and Binding"

The district court also had authority to review the PA Order because it was "final and binding."[89] As a matter of fact, the parties expressly agreed that the PA Order was "final and binding" at the time it was issued, which should have been sufficient for review.[90]

---

[87] *See id.* at 348 ("[C]lass arbitration, to the extent it is manufactured … rather than consensual, is inconsistent with the FAA"; *Hodges v. Comcast Cable Comm's, LLC*, 21 F.4th 535, 544 (9th Cir. 2021) (rejecting rule that would "interfere with the informal, bilateral nature of traditional consumer arbitration") (internal quotes omitted).

[88] *Lamps Plus*, 139 S. Ct. at 1417.

[89] *See Millmen Local 550, United Broth. of Carpenters and Joiners of Am., AFL-CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1375 (9th Cir. 1987)

[90] *See* 2-ER-186. Wells Fargo again insisted the PA Order was "final and binding" on November 8, 2022, after Appellants challenged the order. 2-ER-196. It was only after Appellants sought review that Wells Fargo changed its mind.

Likewise, the AAA's Multi-Case Filing rules also state that a process arbitrator's decisions are "final and binding upon the parties and Merits Arbitrator(s)."[91] Put another way, the parties are bound to the PA Order throughout the arbitration process. As a result, there is no policy concern about the efficiency of review.

Moreover, the damage to Appellants and other claimants already has been done and cannot be undone. This is why injunctive relief is appropriate, and why Appellants came to federal court to obtain it. Delay would be futile and only increase the imposition on Appellants' rights to bilateral arbitration.

## CONCLUSION

Appellants not only deserve their day in court to vindicate their contractual rights to bilateral arbitration, they are entitled to it by federal law, federal policy, and the plain language of their agreements with Wells Fargo. The district court's order should be reversed, and the district court directed to resolve Appellants' first

---

[91] *See* 2-ER-186; *see also P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 866–67 (10th Cir. 1999) ("If the parties to an arbitration clause agree that their arbitration shall be final and binding, some courts have held the parties have consented to judicial confirmation of awards."); *Pace St. Charles v. J.A. Jones, Contr. Co.*, 823 F.2d 120, 124 (5th Cir. 1987) (implying consent judicial review by agreement to be bound by result); *Rainwater v. Nat'l Home Ins. Co.*, 944 F.2d 190, 194 (4th Cir. 1991) (holding "parties agreed that arbitration should be final and binding, and that as a result the arbitration award should be confirmed as made").

cause of action regarding the violation of their rights under the Arbitration Agreement.

Dated: June 23, 2023                      MCCUNE LAW GROUP, APC

By:    */s/ Steven A. Haskins*
        Richard D. McCune, SBN 132124
        Steven A. Haskins, SBN 238865
        Andrew Van Ligten, SBN 348696
        Valerie L. Savran, SBN 334190
        Richard A. Nervig, SBN 226449
        Emily J. Kirk, IL SBN 6275282
        **MCCUNE LAW GROUP, APC**
        3281 East Guasti Road, Suite 100
        Ontario, California 91761
        Telephone: (909) 557-1250
        Facsimile: (909) 557-1275

*Attorneys for Plaintiffs-Appellants,
Alexandria Mosley. Rejoyce Kemp,
Berenice Cisneros, Bruce Parker*

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, Appellants are unaware of any related cases pending in the Ninth Circuit.

Dated: June 23, 2023

MCCUNE LAW GROUP, APC

By:   */s/ Steven A. Haskins*
Richard D. McCune, SBN 132124
Steven A. Haskins, SBN 238865
Andrew Van Ligten, SBN 348696
Valerie L. Savran, SBN 334190
Richard A. Nervig, SBN 226449
Emily J. Kirk, IL SBN 6275282
**MCCUNE LAW GROUP, APC**
3281 East Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiffs-Appellants,*
*Alexandria Mosley. Rejoyce Kemp,*
*Berenice Cisneros, Bruce Parker*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that:

Appellants' Opening Brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) as this brief contains 12,797 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

Appellants' Opening Brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure. Appellants' Opening Brief has been prepared in a proportionately-spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2301 Build 16.0.16026.20002), and Times New Roman 14-point font.

Dated: June 23, 2023

MCCUNE LAW GROUP, APC

By:    */s/ Steven A. Haskins*
                   Richard D. McCune, SBN 132124
                   Steven A. Haskins, SBN 238865
                   Andrew Van Ligten, SBN 348696
                   Valerie L. Savran, SBN 334190
                   Richard A. Nervig, SBN 226449
                   Emily J. Kirk, IL SBN 6275282
                   **MCCUNE LAW GROUP, APC**
                   3281 East Guasti Road, Suite 100
                   Ontario, California 91761
                   Telephone: (909) 557-1250
                   Facsimile: (909) 557-1275

                   *Attorneys for Plaintiffs-Appellants,*
                   *Alexandria Mosley. Rejoyce Kemp,*
                   *Berenice Cisneros, Bruce Parker*