**No. 23-55478**

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

ALEXANDRIA MOSLEY, REJOYCE KEMP,
BERENICE CISNEROS, BRUCE PARKER,

*Plaintiffs-Appellants*

v.

WELLS FARGO & CO.,
WELLS FARGO BANK, N.A.,

*Defendants-Appellees*

---

Appeal from a Decision of the
United States District Court
for the Southern District of California
U.S.D.C. Case No. 3:22-cv-01976-DMS-AGS
The Honorable Dana M. Sabraw, District Judge

---

## APPELLANTS' REPLY BRIEF

---

Richard D. McCune, State Bar No. 132124
rdm@mccunewright.com
Steven A. Haskins, State Bar No. 238865
sah@mccunewright.com
Andrew Van Ligten, State Bar No. 348696
avl@mccunewright.com
Valerie L. Savran, State Bar No. 334190
vls@mccunewright.com
Emily J. Kirk, IL Bar No. 6275282
ejk@mccunewright.com
**McCune Law Group, APC**
3281 East Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiffs-Appellants,*
*Alexandria Mosley. Rejoyce Kemp,*
*Berenice Cisneros, Bruce Parker*

# **<u>TABLE OF CONTENTS</u>**

*Page*

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ................................................................................... 1

ARGUMENT .......................................................................................... 1

I      The PA Order is a Final Order Imposing Class Procedures Ripe for

Judicial Review ...................................................................... 1

A.      Wells Fargo Concedes the PA Order Is Final and Binding ....... 1

B.      Wells Fargo's Bright Line Rule Against Pre-Merits Review

Fails ....................................................................................... 6

C.      Wells Fargo's Narrow Definition of Class Procedures Ignores

Precedent .............................................................................. 10

II      The Parties Did Not "Clearly and Unmistakably" Delegate

Arbitrability to the Arbitrator .............................................. 16

A.      Wells Fargo's Novel Interpretation Fails to Evidence "Clear

and Unmistakable" Intent to Delegate Arbitrability ................ 16

B.      Wells Fargo Incorrectly Insists the Court Must Ignore the

Carve-Out Provision in its Delegation Analysis ...................... 20

C.      Wells Fargo Cannot Re-Write the Carve-Out Provision ......... 23

CONCLUSION ...................................................................................... 29

# **TABLE OF CONTENTS (continued)**

*Page*

CERTIFICATE OF COMPLIANCE ..........................................................................30

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*20/20 Communications, Inc. v. Crawford*,
930 F.3d 715 (5th Cir. 2019) ................................................................. 15

*Aerojet-General Corp. v. Am. Arbitration Ass'n*,
478 F.2d 248 (9th Cir. 1973) ............................................................... 6, 7

*Ali v. Fed. Bureau of Prisons*,
552 U.S. 214 (2008) ........................................................................ 27, 28

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
935 F.3d 274 (5th Cir. 2019) ................................................................. 26

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ...................................................................... Passim

*Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 v. Interstate Distrib. Co.*,
832 F.2d 507 (9th Cir. 1987) ................................................................. 17

*Bosack v. Soward*,
586 F.3d (9th Cir. 2009) ...................................................................... 4, 5

*Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*,
971 F.2d 272 (9th Cir. 1992) ................................................................. 26

*Capriole v. Uber Techs., Inc.*,
7 F.4th 854 (9th Cir. 2021) ................................................................... 25

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) ......................................................... 22, 23

*Cobarruviaz v. Maplebear, Inc.*,
143 F.Supp.3d 930 (N.D. Cal. 2015) ..................................................... 21

*Crooks v. Wells Fargo Bank, N.A.*,
312 F.Supp.3d 932 (S.D. Cal. 2018) ..................................................... 19

# TABLE OF AUTHORITIES, (continued)

*Page(s)*

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
  511 U.S. 863 (1994) ............................................................... 3

*E.E.O.C. v. Waffle House*,
  534 U.S. 279 (2002) ............................................................. 26

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995) ....................................................... 16, 17

*Green Tree Financial Corp.-Alabama v. Randolph*,
  531 U.S. 79 (2000) ................................................................ 2

*Hart Surgical, Inc. v. Ultracision, Inc.*,
  244 F.3d 231 (1st Cir. 2001) .................................................. 5

*Herrington v. Waterstone Mortg. Corp.*,
  907 F.3d 502 (7th Cir. 2018) ................................................ 14

*Idaho v. Coeur d'Alene Tribe*,
  794 F.3d 1039 (9th Cir. 2015) .............................................. 20

*In re Sussex*,
  781 F.3d 1065 (9th Cir. 2015) ........................................ 2, 6, 7

*Int'l Bhd. of Teamsters v. NASA Servs., Inc.*,
  957 F.3d 1038 (9th Cir. 2020) .............................................. 20

*Lamps Plus, Inc. v. Varela*,
  139 S.Ct. 1407 (2019) .............................................. 12, 13, 14

*Leuthaser v. United States*,
  71 F.4th 1189 (9th Cir. 2023) .............................................. 27

*Local Joint Exec. Bd. v. Mirage Casino-Hotel, Inc.*,
  911 F.3d 588 (9th Cir. 2018) ................................................ 17

*Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*,
  2023 WL 372381 (W.D. Wash. Jan. 24, 2023) .................... 27

# TABLE OF AUTHORITIES, (continued)

*Page(s)*

*McLane & McLane v. Prudential Ins. Co. of Am.*,
    735 F.2d 1194 (9th Cir. 1984)..................................................... 18

*Merrion v. Jicarilla Apache Tribe*,
    455 U.S. 130 (1982) ................................................................... 16

*Metro. Life Ins. v. Bucsek*,
    919 F.3d 184 (2d Cir. 2019).................................................. 21, 23

*Millmen Local 550, United Bhd. of Carpenters and Joiners of Am., AFL-CIO v.
    Wells Exterior Trim*,
    828 F.2d 1373 (9th Cir. 1987)..................................................... 5

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
    770 F.3d 1010 (2d Cir. 2014)..................................................... 23

*New United Motor, Mfg., Inc. v. United Auto Workers Local 2244*,
    617 F.Supp.2d 948 (N.D. Cal. 2008) .......................................... 5

*Opalinski v. Robert Half Intern. Inc.*,
    761 F.3d 326 (3d Cir. 2014)....................................................... 15

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
    724 F.3d 1069 (9th Cir. 2013).............................................. 21, 22

*Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*,
    946 F.2d 722 (9th Cir.1991)........................................................ 5

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ................................................................... 13

*Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*,
    935 F.2d 1019 (9th Cir. 1991)................................................. 2, 6

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ..................................................................... 20

*Russell Motor Car Co. v. United States*,
    261 U.S. 514 (1923) ................................................................... 27

# TABLE OF AUTHORITIES, (continued)

*Page(s)*

*Shakey's Inc. v. Covalt,*
  704 F.2d 426 (9th Cir. 1983)................................................................ 20

*Shivkov v. Artex Risk Solutions*,
  974 F.3d 1051 (9th Cir. 2020)....................................................... 14, 15

*Smart v. Int'l Bhd. Of Elec. Workers, Local 702*,
  315 F.3d 721 (7th Cir. 2002)............................................................ 3, 5

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ..................................................................... Passim

*Toyo Tire Hldgs. of Am., Inc. v. Cont'l Tire N. Am., Inc.*,
  609 F.3d 975 (9th Cir. 2010)......................................................... 25, 27

*U.S. v. Ullah*,
  976 F.2d 509 (9th Cir. 1992)................................................................ 7

*United States v. Elias*,
  921 F.2d 870 (9th Cir. 1990)............................................................... 11

*Viking River Cruises, Inc. v. Moriana*,
  142 S.Ct. 1906 (2022) ......................................................... 11, 12, 13

## Statutes

9 U.S.C. § 4 ........................................................................................ 8
9 U.S.C. § 10 ................................................................................. 2, 3
9 U.S.C. § 16 ...................................................................................... 3
28 U.S.C. § 1291 ........................................................................... 2, 3
Cal. Code. Civ. Proc. § 706.010 ...................................................... 28
Cal. Code Civ. Proc. § 708.620 ....................................................... 28

## Rules

Fed. R. App. P. 10(a) ........................................................................ 11
Fed. R. App. P. 32(a)(7)(B) .............................................................. 30
Fed. R. App. P. 32(a)(7)(B)(iii) ........................................................ 30

## <u>TABLE OF AUTHORITIES, (continued)</u>

*Page(s)*

Fed. R. App. P. 32(a)(7)(C) ........................................................................ 30

Fed. R. App. P. 32(a)(6)............................................................................. 30

**Other Authorities**

Restatement (Second) of Contracts § 203(a) .......................................... 26

## **INTRODUCTION**

Wells Fargo's primary argument is elegant in its simplicity: "the PA Order is not subject to judicial review because it is interlocutory." Resp. Br. 14. But what seems simple is not necessarily so. Wells Fargo's facially simple argument ends up failing for three reasons. First, the PA Order is final because the parties agreed it would be. The AAA rules and the arbitration's own structure confirm this understanding. Second, courts often review non-merits arbitration decisions when necessary, and Wells Fargo cannot change that fact by labeling the PA Order "interlocutory." And third, Supreme Court precedent authorizes judicial review of non-merits arbitral decisions imposing class and collective procedures on bilateral arbitration agreements. The PA Order is reviewable and the District Court's dismissal of the Complaint should be reversed.

## **ARGUMENT**

## I    **The PA Order is a Final Order Imposing Class Procedures Ripe for Judicial Review**

### A.    **Wells Fargo Concedes the PA Order Is Final and Binding**

Wells Fargo concedes to agreeing the PA Order was "final and binding," but nonetheless insists it did not agree the order was final "in the judicial review sense." Resp. Br. 22. Unfortunately for Wells Fargo, it fails to identify a

meaningful standard for determining when a mutually-agreed-upon "final" award is ripe for judicial review and when it is not.

The closest Wells Fargo comes is to argue an order is "final in a judicial review sense" when a claimant has "lost or won her claim against Wells Fargo." Resp. Br. 22–23. But Wells Fargo's conception of finality conflicts with Supreme Court and Ninth Circuit precedent. The Supreme Court has repeatedly affirmed the power of lower courts to review pre-merits arbitral decisions imposing class or collective procedures upon bilateral arbitration.[1] And this Court has long recognized that "[a]n arbitrator's interim decision that is final as to a distinct issue may also be reviewable in some circumstances."[2] Wells Fargo cannot show that a final decision on the merits is the only type of appealable "final" decision.

Falling back, Wells Fargo suggests the Court import the "final decision rule" of 28 U.S.C. § 1291 into 9 U.S.C. § 10. Resp. Br. 23. But this argument relies more on subterfuge than substance. The primary case Wells Fargo cites for its analogy, *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), says nothing about the "finality" requirement of 9 U.S.C. § 10, which authorizes district court review of arbitral decisions. *Green Tree* instead compared the language of

---

[1] *See e.g., Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).

[2] *In re Sussex*, 781 F.3d 1065, 1071 n.2 (9th Cir. 2015) (citing *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022–23 (9th Cir. 1991)).

9 U.S.C. § 16, the FAA's appellate jurisdiction statute, to cases interpreting the "final decision rule" of 28 U.S.C. § 1291.[3] But the language of 9 U.S.C. § 10 does not incorporate the same "final decision" language of 28 U.S.C. § 1291 or 9 U.S.C. § 16.[4] Nor does 9 U.S.C. § 10 implicate the same issues of appellate jurisdiction.

The "final decision" rule governing appellate jurisdiction under 28 U.S.C. § 1291 is particularly inappropriate in the arbitration context.[5] As Judge Posner reasoned, one of arbitration's primary benefits is empowering the parties to tailor efficient procedures and confine an arbitrator's authority to a discrete set of issues that can then become final and ripe for judicial review.[6] To impose the more stringent "final decision" rule on arbitration would frustrate parties' express intent to make certain specific decisions "final and binding," and thus reviewable.[7]

---

[3] 531 U.S. at 86 (citing *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (interpreting 28 U.S.C. § 1291)).

[4] *Compare* 9 U.S.C. § 10 (allowing district court review of, among other things, "mutual, final, and definite award upon the subject matter submitted") *with* 9 U.S.C. § 16 (granting appellate jurisdiction from "a final decision with respect to an arbitration") *and* 28 U.S.C. § 1291 (granting appellate jurisdiction from "all final decisions of the district courts").

[5] *Smart v. Int'l Bhd. Of Elec. Workers, Local 702*, 315 F.3d 721, 726 (7th Cir. 2002) ("section 10(a)(4) should not be interpreted to incorporate the "final-judgment rule of 28 U.S.C. § 1291").

[6] *See id.*

[7] *See id.*

The other case Wells Fargo relies upon, *Bosack v. Soward*, 586 F.3d 1086 (9th Cir. 2009), cuts against its argument. In *Bosack*, the Ninth Circuit was asked to review five "interim awards."[8] Of the five, the arbitral panel had deemed one award to be final and relinquished its jurisdiction.[9] The *Bosack* court noted that an interim award may be considered final for judicial review "if the award states it is final and if the arbitrator intended the award to be final."[10] It determined that the single award "satisfie[d] the criteria for finality" because the arbitrators had explicitly stated the award was final and relinquished jurisdiction over the issue.[11]

The PA Order satisfies that test. First, the parties' adoption of the Supplementary Rules made the PA Order "final and binding."[12] Supp. Rule MC-6(j) ("Rulings by the Process Arbitrator will be final and binding upon the parties…"); *see* 2-ER-185. Second, those same Supplementary Rules provided for the Process Arbitrator's authority to cease after issuing the PA Order. Supp. Rule

---

[8] 586 F.3d at 1101–02.

[9] *Id.* at 1103.

[10] *Id.*

[11] *Id.*

[12] *See id.* at 1103 (recognizing finality of award arbitral panel "expressly made final"); *see also Stolt-Nielsen*, 559 U.S. at 692 n.7 (reviewing "partial final award" on availability class arbitration) (Ginsburg, J., dissenting).

MC-6(i) ("The Process Arbitrator's authority shall cease upon the rendering of the Process Arbitrator's ruling."); *see* 2-ER-185. The arbitrator's loss of jurisdiction demonstrates the PA Order's finality.[13] Indeed, the parties agreed to bifurcate the arbitration between administrative and merits phases, further indicating that they intended for the PA Order to be final before undertaking the next phase of arbitration.[14] Resp. Br. 9. Under these circumstances, the PA Order "satisfies the criteria for finality" and is ripe for judicial review.[15]

---

[13] *Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*, 946 F.2d 722, 724 (9th Cir.1991) ("Where an arbitrator retains jurisdiction in order to decide a substantive issue the parties have not yet resolved, this retention of jurisdiction indicates that the arbitrator did not intend the award to be final."); *Smart*, 315 F.3d at 725–26 ("if the arbitrator himself thinks he's through with the case, then his award is final and appealable"); *see also Bosack*, 586 F.3d at 1103 (finding nominally "interim" award final where panel did not reserve jurisdiction over award).

[14] *See Millmen Local 550, United Bhd. of Carpenters and Joiners of Am., AFL-CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1376–77 n.3 (9th Cir. 1987) ("An agreement to bifurcate might suggest that the parties and the arbitrator desired that each determination be final and binding."); *New United Motor, Mfg., Inc. v. United Auto Workers Local 2244*, 617 F.Supp.2d 948, 957 (N.D. Cal. 2008) (reviewing interim decision of bifurcated arbitration proceeding); *see also Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d 231, 235 (1st Cir. 2001) (noting "tension between desire to effectuate the parties' intent to divide an arbitration into distinct phases, and making sure that a losing party does not thereby forfeit an appeal by failing to object after the completion of a phase").

[15] *Bosack*, 586 F.3d at 1103; *see Stolt-Nielsen*, 559 U.S. at 670 n.2 (holding interim order imposing class arbitration ripe for judicial review); *but see id.* at 692 (Ginsburg, J., dissenting) (recognizing majority opinion "approved immediate judicial review" of preliminary arbitral decision authorizing class procedures in bilateral arbitration).

## B. Wells Fargo's Bright Line Rule Against Pre-Merits Review Fails

Wells Fargo also insists the PA Order is "interlocutory" because it makes no "final disposition of anyone's claim." Resp. Br. 16. Wells Fargo argues that classifying the PA Order as "interlocutory" raises a "wall of case law" that "bars courts from reviewing interlocutory arbitration orders." Resp. Br. 18. But Wells Fargo fails to tap into any of that case law here.

Certainly, *In re Sussex*, 781 F.3d 1065 (9th Cir. 2015) erects no such wall. Resp. Br. 18. In *Sussex*, the Court noted that "judicial review prior to the rendition of a final arbitration award should be indulged, if at all, only in the most extreme cases."[16] Read in isolation, this language might support Wells Fargo's blanket rule, but the court also noted that "[a]n arbitrator's interim decision that is final as to a distinct issue may also be reviewable in some circumstances."[17] Thus, even *Sussex* acknowledged no blanket rule barring review of all pre-merits decisions.

Ignoring this, Wells Fargo also argues that *Sussex* precludes pre-merits interventions absent "extreme circumstances."[18] Resp. Br. 18–19. Appellants,

---

[16] 781 F.3d at 1072 (quoting *Aerojet-General Corp. v. Am. Arbitration Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973)).

[17] *Id.* at 1071 n.2 (citing *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022–23 (9th Cir. 1991)).

[18] *See id.* at 1073 (citing *Aerojet*, 478 F.2d at 251).

Wells Fargo maintains, cannot meet the "extreme circumstances" requirement because their complaints "boil down to cost and delay."[19] *Id.*

Of course, cost and delay do not concern Wells Fargo. For Wells Fargo, they are the point. But whatever "extreme circumstances" may mean, they must contemplate—at the very least—that courts will intervene to prevent imposing class or collective procedures in bilateral arbitration.

In *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010), the Supreme Court considered whether a non-merits arbitration order imposing class arbitration procedures was reviewable. The dissent argued, as Wells Fargo does here, that the decision was not.[20] *See* Resp. Br. 29 n.6. The *Stolt-Nielsen* parties thus would have been required to follow the path Wells Fargo demands—

---

[19] Wells Fargo also claims that by not naming *Aerojet's* "extreme circumstances" exception in the Opening Brief, the argument is waived. Resp. Br. 19. But the Opening Brief identified the type of circumstances—the imposition of class or collective procedures in bilateral arbitration—that warrant judicial intervention. Op. Br. 32–34. In any event, the Court may consider arguments raised in the appellee's brief or where failure to raise the issue in the opening brief did not prejudice the opposing party. *U.S. v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992) (identifying exceptions to waiver). Both exceptions apply here. Appellants addressed the substantive argument, and Wells Fargo dedicated almost three pages to "extreme circumstances" in its brief, all of which is "sufficient to permit an informed resolution of the dispute." *Id.* at 514; *see* Resp. Br. 18–20.

[20] *Stolt-Nielsen*, 559 U.S. at 692 (Ginsburg, J., dissenting).

accept the class procedures imposed upon the parties, obtain a decision on the merits, then challenge the class arbitration rulings along with the merits.[21]

The majority rejected this argument, noting:

> The arbitration panel's award means that petitions must now submit to class determination proceedings before arbitrators who, if petitioners are correct, have no authority to require class arbitration absent the parties' agreement to resolve their disputes on that basis. … Should petitioners refuse to proceed with what they maintain is essentially an ultra vires proceeding, they would almost certainly be subject to a petition to compel arbitration under 9 U.S.C. § 4. …We think it is clear on these facts that petitioners have demonstrated sufficient hardship, and that their question is fit for our review at this time.[22]

The same reasoning applies here. It is not mere "cost and delay" that Appellants contest—though that would be enough for just about anyone outside a multi-billion dollar banking conglomerate like Wells Fargo—but an arbitrator imposing class procedures on what the parties agreed was a bilateral process.[23] Put simply, Appellants cannot be required to arbitrate using these class procedures

---

[21] *See id.*

[22] *Id.* at 670 n.2.

[23] *Id.* (imposing class procedures on bilateral arbitration is "fundamentally at war with the foundation FAA principle that arbitration is a matter of consent).

when there is "no authority to require class arbitration."[24]

Wells Fargo's attempt to distinguish *Stolt-Nielsen* is unavailing. In *Stolt-Nielsen*, as here, the parties and the arbitrators agreed that the decision at issue would be final.[25] Wells Fargo suggests there may be some importance to the fact that a "*separate* agreement" existed in *Stolt-Nielsen*, but doesn't say what the significance is. Resp. Br. 29. And contrary to Wells Fargo's claim otherwise, *Stolt-Nielsen* began in arbitration, not in court.[26] Like Appellants here, the *Stolt-Nielsen* claimants initiated arbitration and agreed to participate in procedures that led to a non-merits decision imposing class arbitration, absent any contractual basis for it.[27] In *Stolt-Nielsen,* the dissent opposed mid-arbitration review, raising many of the same arguments Wells Fargo makes here.[28] But the majority nonetheless

---

[24] *Id.*

[25] *See* Supp. Rule MC-6 (classifying Process Arbitrator's awards as "final and binding"); *Stolt-Nielsen*, 559 U.S. at 691 ("arbitrators in the matter at hand labeled their decision "Partial Final Clause Construction Award").

[26] *Id.* at 668–669. A separate litigation began in 2003, which concluded with an understanding that the antitrust dispute was subject to arbitration. *Id.* at 668. In 2005, AnimalFeeds initiated a demand for arbitration, culminating in the "partial final award" on class procedures. *Id.* at 669.

[27] *See id.* at 668, 691.

[28] *See id.* at 690–92 (Ginsburg, J. dissenting) (arguing the "decision that the [] arbitration clause permitted class arbitration was abstract and highly interlocutory").

intervened to ensure class procedures were not imposed.[29] The Court should do the same here.

## C. Wells Fargo's Narrow Definition of Class Procedures Ignores Precedent

Wells Fargo argues the PA Order does not impose class or collective procedures because it requires Appellants "separately, and individually" to state certain facts. Resp. Br. 24. This argument focuses solely on conduct but ignores that the PA Order resolved procedural issues for all current and future claimants as a class.[30] Left undisturbed, parties like Wells Fargo can impose a contract with a class action waiver, but then pick and choose the issues to resolve on a class or collective basis. This is not what the parties agreed upon.

Eliding the plain substance and effect of the PA Order—which bears all the characteristics of class procedure—Wells Fargo argues that the only class or collective procedures the arbitrator was not allowed to impose upon bilateral arbitration are those using "a representative plaintiff's individual claim as a basis

---

[29] *See Id.* at 670 n.2.

[30] The PA Order applied to "all Claims submitted to the American Arbitration Association after the service date of [the PA Order]." 2-ER-191; *see* Supp. Rule MC-6(k) ("Rulings by the Process Arbitrator will be final and binding upon the parties and Merits Arbitrator(s) with respect to subsequently filed cases…").

to 'adjudicate claims of multiple parties at once, instead of in separate suits.'"[31]
Resp. Br. 25. The preservation of bilateral arbitration, however, is not so limited.
By focusing solely on merits determinations, Wells Fargo ignores that class
procedures invite a "procedural morass" incompatible with bilateral arbitration.[32]
Wells Fargo also insists that Appellants' only option is to accept evidentiary
sanctions, obtain a decision on the merits, and then—individually— challenge
thousands of decisions through the courts.[33] *See* Resp. Br. 26. This outcome
necessarily "makes the process slower … [and] more costly" while depriving
Appellants (and Wells Fargo) of the "benefits of private dispute resolution."[34] This
result is "incompatible with the FAA."[35]

---

[31] *Viking River Cruises, Inc. v. Moriana*, 142 S.Ct. 1906, 1920 (2022).

[32] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011) ("the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment").

[33] To the extent Wells Fargo's arguments rely on events, including later actions of the Process Arbitrator, occurring after entry of the decision below, such "[d]ocuments or facts not presented to the district court are not part of the record on appeal." *United States v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990); *see* Fed. R. App. P. 10(a).

[34] *Viking River*, 142 S.Ct. at 1924 (citing *Stolt-Nielsen*, 559 U.S. at 685); *see Concepcion*, 563 U.S. at 350–51.

[35] *Viking River*, 142 S.Ct. at 1924.

Even if the Court accepted Wells Fargo's framing of these issues, the PA Order and the process it requires bear all the hallmarks of class arbitration as defined in *Viking River.* A recap of the process leading to the PA Order is illustrative. Wells Fargo petitioned the Process Arbitrator to compel all claimants, present and future, to meet a heightened pleading standard. Resp. Br. 10; *see* SER-12–13; SER-123. It then drafted a memorandum identifying allegedly representative Authorization Forms that, supposedly, showed deficiencies typical throughout the class.[36] SER-137–39. The Process Arbitrator relied on these allegedly representative claims and entered an order binding a class of individuals, including all current and future claimants. 2-ER-191. The PA Order thus "[bound] absentees" and created "problems of notice, due process, and adequacy of representation." Resp. Br. 25 (quoting *Viking River*, 142 S.Ct. at 1920–21).

The PA Order also failed to protect the due process rights of thousands of current and future claimants.[37] Wells Fargo retorts that due process is satisfied

---

[36] The memorandum highlighted "exemplar authorizations" to justify the requested class-wide procedural order. SER-138. Beyond the "two examples" highlighted in its memorandum, Wells Fargo assured the Process Arbitrator that its "review has identified dozens of similar problems …." SER-139. But the PA Order was based on these two examples alone. *See* 2-ER-191.

[37] *See Concepcion*, 563 U.S. at 349–50 (noting class arbitration is unsuited to protect the rights of third parties); *see also Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1416 (2019) ("Class arbitration … also raises serious due process concerns

merely because "[e]veryone will get a merits hearing." Resp. Br. 26. But this argument misses the point. All parties are entitled to the bilateral arbitration process to which they agreed.[38] Due process requires protecting the rights of absent parties and, in the class context, protections ensuring that class representatives will adequately represent the class.[39] These protections were not present here, even as the Process Arbitrator altered the rights of thousands of current and future claimants.[40] 2-ER-191; *see* Supp. Rule MC-6(k) ("Rulings by the Process Arbitrator will be final and binding upon the parties and Merits Arbitrator(s) with respect to *subsequently filed cases*…") (emphasis added).

Tellingly, Wells Fargo never addresses the PA Order's impact on future claimants at all. 2-ER-191; *see* Supp. Rule MC-6(k). By extending the PA Order to future claimants, the Process Arbitrator exceeded her authority by "adjudicat[ing]

---

by adjudicating the rights of absent members of the plaintiff class—[] with only limited review.").

[38] *See Concepcion*, 563 U.S. at 349–50; *see also Lamps Plus*, 139 S.Ct. at 1416.

[39] *Concepcion*, 563 U.S. at 350 ("[T]o bind absentees in litigation, class representatives must at all times adequately represent absent class members, and absent members must be afforded notice, and opportunity to be heard, and a right to opt out of the class. At least this amount of process would be presumably required for absent parties to be bound by the results of the arbitration.").

[40] *See id.* at 349; *see also Lamps Plus*, 139 S.Ct. at 1416; *Stolt-Nielsen*, 559 U.S. at 686 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999)).

the rights of absent parties."[41] The PA Order is ripe for review on that ground alone.[42]

In a last-ditch effort to muddy the waters, Wells Fargo tries to distinguish the class procedures here from those raised in *Shivkov v. Artex Risk Solutions*, 974 F.3d 1051 (9th Cir. 2020) and *Stolt-Nielsen*. Resp. Br. 28–30. As discussed above, Wells Fargo's attempt to distinguish *Stolt-Nielsen* fails. Here, as in *Stolt-Nielsen*, the parties initiated arbitration and agreed the arbitrator's order would be final. The arbitrators in both instances then imposed class procedures. Thus, the PA Order is as ripe for judicial review as in *Stolt-Nielsen*.[43]

*Shivkov*, while not directly addressing mid-arbitration review, must be read in concert with Supreme Court precedent. In *Shivkov*, the Ninth Circuit recognized "the structural features of class arbitration make it a 'fundamental' change from the norm of bilateral arbitration."[44] Considering the Supreme Court's precedent on

---

[41] *Stolt-Nielsen*, 559 U.S. at 686 (noting class procedures frustrate bilateral arbitration by, among other things, "adjudicate[ing] the rights of absent parties"); *Lamps Plus*, 139 S.Ct. at 1416 (recognizing "serious due process concerns by adjudicating the rights of absent [parties]"); *see Concepcion*, 563 U.S. at 349.

[42] *Stolt-Nielsen*, 559 U.S. at 670 n.2 (holding imposition of class procedures on bilateral arbitration demonstrated "sufficient hardship" to warrant judicial review).

[43] *Id.*

[44] *Shivkov*, 974 F.3d at 1067 (quoting *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 509 (7th Cir. 2018); *see Stolt-Nielsen*, 559 U.S. at 686.

class arbitration, the *Shivkov* court followed seven other circuits in holding that the availability of class arbitration was a gateway issue reserved for the courts.[45]

The import of *Shivkov* here is threefold. First, the *Shivkov* court recognized that "class arbitration is different and thus should be treated differently."[46] Thus, the Ninth Circuit subjects class arbitration procedures to higher scrutiny—reserving the issue to courts.[47] Reaching that conclusion, *Shivkov* favorably relied upon cases from outside the Ninth Circuit permitting mid-arbitration intervention to review orders imposing class arbitration.[48] Consistent with the Ninth Circuit's heightened scrutiny of class arbitration, and in light with *Stolt-Nielsen's* authorization of mid-arbitration review, the PA Order is subject to judicial review.

In sum, the Court has jurisdiction to intervene. Under Wells Fargo's reasoning, once arbitration is commenced, a court is powerless until a decision on the merits. This rule is as unsupported as it is unjustifiable. Judicial review protects the rights of all parties to bilateral arbitration. No more, no less.

---

[45] *Shivkov*, 974 F.3d at 1067–68.

[46] *Id.* at 1067 (citing *Stolt-Nielsen*, 559 U.S. at 685 and *Concepcion*, 563 U.S. at 348–50).

[47] *Id.* (reserving gateway issues concerning class and collective procedures to the courts).

[48] *Id.* (citing *20/20 Communications, Inc. v. Crawford*, 930 F.3d 715, 717–18 (5th Cir. 2019); *Opalinski v. Robert Half Intern. Inc.*, 761 F.3d 326, 329 (3d Cir. 2014)).

**II**     <u>**The Parties Did Not "Clearly and Unmistakably" Delegate Arbitrability to the Arbitrator**</u>

Wells Fargo's fallback argument—that an arbitrator, not the Court, should determine arbitrability—fares no better. Indeed, Wells Fargo barely addresses the District Court's delegation analysis beyond claiming that it read the Agreement in a "clear and natural way." Resp. Br. 34. Instead, it offers a novel *post hoc* interpretation of the Arbitration Agreement not raised below. Resp. Br. 34-35. But Wells Fargo's argument, timely or not, is not enough because it fails to demonstrate that the Arbitration Agreement satisfies the "clear and unmistakable" standard.

**A.**     **Wells Fargo's Novel Interpretation Fails to Evidence "Clear and Unmistakable" Intent to Delegate Arbitrability**

Wells Fargo first argues that the District Court's analysis was based on a plausible interpretation of the Arbitration Agreement. But the mere existence of some reasonable interpretation does not satisfy the more stringent "clear and unmistakable" standard. To satisfy that "heightened standard," the agreement must "admit of no other reasonable interpretation."[49] Neither Wells Fargo nor the District Court satisfies this standard.

---

[49] *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148 (1982) (defining clear and unmistakable standard); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S.

In Wells Fargo's new interpretation of the Arbitration Agreement, the parties begin with a broadly-worded delegation clause, defining a "dispute" as "any unresolved disagreement between Wells Fargo and you." Resp. Br. 35. Then, the agreement provides examples of "disputes," including "disagreement[s] about this Arbitration Agreement's meaning, application, or enforcement." Resp. Br. 35.

This is one interpretation, but as Wells Fargo's own argument demonstrates, it is by no means the agreement's only reasonable interpretation.[50] Indeed, Wells Fargo's explanation has multiple flaws. First, when it provided examples to customers in other contexts, it did so in a clear and unequivocal manner. For example, in Wells Fargo's "Business Accounts Only" Arbitration Agreement, included in every Deposit Account Agreement one page after the Consumer Arbitration Agreement, it provided:

> **Definition:** Arbitration means an impartial third party will hear the dispute between Wells Fargo and you and provide a decision. … A "dispute" is any unresolved disagreement between Wells Fargo and you. A "dispute" may also include a disagreement about this Arbitration Agreement's meaning, application, or enforcement.

---

938, 944–45 (1995); *Local Joint Exec. Bd. v. Mirage Casino-Hotel, Inc.*, 911 F.3d 588, 598 (9th Cir. 2018).

[50] *See Kaplan*, 514 U.S. at 944–45 (finding no "clear and unmistakable" intent in ambiguous text); *Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 v. Interstate Distrib. Co.*, 832 F.2d 507 (9th Cir. 1987) (parties delegate arbitrability "only if they leave no doubt that such was their intent").

> [...] Wells Fargo and you agree, at Wells Fargo's or your request, to submit to binding arbitration all claims, disputes, and controversies between or among Wells Fargo and you (and their respective employees, officers, directors, attorneys, and other agents), whether in tort, contract or otherwise arising out of or relating in any way to your account(s) and/or service(s), and their negotiation, execution, administration, modification, substitution, formation, inducement, enforcement, default, or termination (*each, a "dispute"*).

2-ER-66 (emphasis added). The second paragraph expressly lists a series of potential "disputes," clarifying that each is a defined "dispute." *Id.* But this list excludes disagreements about the Arbitration Agreement's "meaning, application, or enforcement." Had Wells Fargo intended to provide similar examples in its consumer arbitration agreement, it could have—and would have—done so.[51] *Cf.* 2-ER-65.

Second, the Arbitration Agreement's structure undermines Wells Fargo's interpretation. While Wells Fargo identifies one "example" found in the Arbitration Agreement's definition of arbitration, the other is found in the "[a]pplicable rules" — an entirely different section. 2-ER-65. It strains credulity to argue, as Wells Fargo does, that either party read the relevant portion of the definition before skipping to far-flung sections in search of other examples. Its

---

[51] *McLane & McLane v. Prudential Ins. Co. of Am.*, 735 F.2d 1194, 1195–96 (9th Cir. 1984) (holding courts "may presume that words have the same meaning throughout [a] contract").

interpretation of the Arbitration Agreement is thus unlikely, at best, falling well short of demonstrating "clear and unmistakable" intent.

Third, Wells Fargo's interpretation fails to address the Arbitration Agreement's conditional language providing that a dispute "***may*** also include a disagreement over this Arbitration Agreement's meaning, application, or enforcement." Resp. Br. 34. Wells Fargo insists that the word "may" provides clarity by offering an example of a "dispute," but Wells Fargo does not use similar conditional language in situations where "this Arbitration Agreement is in dispute."[52] 2-ER-66. Wells Fargo could have included examples separately and unequivocally, as it did in its Business Accounts agreement, but failed to do so. Instead, the conditional language created uncertainty and left the Arbitration Agreement susceptible to different interpretations.

Appellants' interpretation resolves the flaws arising from Wells Fargo's interpretation. As Appellants argue, the Arbitration Agreement begins with broad language, defining "dispute" to mean "any unresolved disagreement." 2-ER-65. But this breadth is immediately undercut by conditional language suggesting that

---

[52] *Cf. Crooks v. Wells Fargo Bank, N.A.*, 312 F.Supp.3d 932, 937 (S.D. Cal. 2018) (finding clear and unmistakable delegation where agreement stated "any claim or dispute, ... (including the interpretation and the scope of this Arbitration Provision, and the arbitrability of the claim or dispute), ... *shall*, ... be resolved by neutral, binding arbitration and not by a court action." (emphasis added).

disputes "may" include disagreements over "meaning, application, or enforcement." 2-ER-65. This language implies that some disagreements ***may not*** be "disputes."[53] Because this interpretation is at least as reasonable as Wells Fargo or the District Court offer, Wells Fargo fails to demonstrate the parties' "clear and unmistakable" intent to delegate arbitrability.

**B.      Wells Fargo Incorrectly Insists the Court Must Ignore the Carve-Out Provision in its Delegation Analysis**

Wells Fargo also insists the Court may not consider the carve-out provision in its delegation analysis. Resp. Br. 35-37. It argues that courts may not look beyond the "delegation" clause to other portions of an arbitration agreement when deciding delegation. *Id.* This argument is unpersuasive.

The primary issue—whether the contract provides clear and unmistakable evidence of the parties' intent to delegate arbitrability—is one of contract interpretation. And thus, the Court must interpret the Arbitration Agreement as a whole to determine whether the parties intended to delegate arbitrability.[54] The

---

[53] *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010).

[54] *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (reversing district court's order compelling arbitration where court failed to interpret arbitration clause in context of the contract as a whole); *see Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1045 (9th Cir. 2015) (finding arbitration provision did not prevent litigation by interpreting entirety of contract which provided alternative complaint mechanism); *see also Shakey's Inc. v. Covalt*, 704

delegation issue does not change this principle. The Court must consider every portion of the Arbitration Agreement—including the carve-out provision—to "give effect to the intent of the parties."[55]

Wells Fargo argues that this Court's decisions in *Oracle* and *Caremark* prohibit consideration of the carve-out provision. Resp. Br. 35-37. But the question is not quite whether the carve-out provision actually decides the delegation question. *See* Resp. Br. 35. Instead, employing rules of contract interpretation, the Court must consider whether the carve-out provision is relevant to the parties' intent to delegate arbitrability.[56] Op. Br. 29–31.

Though Wells Fargo relies on both cases, neither *Oracle* nor *Caremark* provide much guidance here. In both cases, this Court found clear and

---

F.2d 426, 434 (9th Cir. 1983) ("A written contract must be read as a whole and every part interpreted with reference to the whole.")

[55] *Stolt-Nielsen*, 559 U.S. at 684; *see Int'l Bhd. of Teamsters,* 957 F.3d at 1042; *Coeur d'Alene Tribe*, 794 F.3d at 1045 (interpreting entirety of contract to limit scope of arbitration agreement).

[56] *Metro. Life Ins. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019) ("the clearer it is that the terms of the arbitration agreement reject arbitration of the dispute, the less likely it is that the parties intended to be bound to arbitration the question of arbitrability"); *Cobarruviaz v. Maplebear, Inc.*, 143 F.Supp.3d 930, 940–41 (N.D. Cal. 2015) ("While in isolation [the delegation clause] may appear clear, it is inconsistent with the severability clause … which states that 'any arbitrator or court' could declare or determine that a provision of the Agreement is invalid or unenforceable.").

unmistakable intent of delegation between two sophisticated parties after both incorporated external rules, containing an express delegation clause, into their respective agreements.[57] In that context, "a carve-out clause in the parties' agreement does not negate incorporation of the [external] rules."[58] Thus, these cases merely held that by incorporating an unequivocal delegation clause into an agreement, the parties had communicated a clear intent to delegate.[59]

Unlike *Oracle* or *Caremark*, Wells Fargo identifies no outside source for incorporating a "clear and unmistakable" delegation clause.[60] Any intent to delegate must be found in the Arbitration Agreement itself. And while Appellants disagree with the District Court's conclusions for the reasons discussed in the opening brief, at least it cobbled together three separate sections of the Arbitration Agreement to try. Resp. Br. 34. Wells Fargo does not even do that. *Oracle* and

---

[57] *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075 (9th Cir. 2013) (UNCITRAL Rules); *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1026 (9th Cir. 2022) (AAA Rules).

[58] *Oracle*, 724 F.3d at 1075; *see Caremark*, 43 F.4th at 1031.

[59] *Oracle*, 724 F.3d at 1075 ("the parties have clearly and unmistakably delegated to [arbitrability] to the arbitrator by incorporating the UNCITRAL rules"); *see Caremark*, 43 F.4th at 1031.

[60] *Cf. Oracle*, 724 F.3d at 1075; *Caremark*, 43 F.4th at 1026.

*Caremark* do not control and cannot support Wells Fargo's approach or, for that matter, the District Court's.

When accounting for the whole Arbitration Agreement, the District Court's error is clear. In contrast to the inconsistent and incongruous language suggesting delegation, the carve-out provision unambiguously authorizes the courts to resolve this dispute.[61] Op. Br. 29–31. Put simply, the clarity of the carve-out provision is straightforward evidence of the parties' intent, and far better evidence of that intent than any other.[62] It should control here.

### C. Wells Fargo Cannot Re-Write the Carve-Out Provision

Finally, Wells Fargo complains that Appellants do not seek a "provisional or ancillary remedy." Resp. Br. 38. It argues that the carve-out only allows "temporary remed[ies] awarded before judgment and pending the action's disposition." *Id.* These arguments also fail.

First, Wells Fargo's narrow interpretation of the remedies the carve-out provision permits end up rewriting the Arbitration Agreement's plain language.

---

[61] *See Bucsek*, 919 F.3d at 191; *Cobarruviaz*, 143 F.Supp.3d at 940–41.

[62] *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010 (2d Cir. 2014) (no "clear and unmistakable" evidence of intent to delegate where broad arbitration clause is subject to a qualifying provision that at least arguably covers the present dispute"); *Bucsek*, 919 F.3d at 191; *Cobarruviaz*, 143 F.Supp.3d at 940–41.

Relying solely on the definition of "provisional remedy,"[63] Wells Fargo suggests that the carve-out only authorizes injunctive relief as "temporary remed[ies] awarded before judgment and pending the action's disposition …." Resp. Br. 38.

But the carve-out provision does not merely authorize "provisional" remedies— it authorizes "provisional *or ancillary* remedies … such as injunctive relief." 2-ER-66. This language expressly provides for "ancillary" injunctive relief separate and apart from "provisional" injunctive relief. No source defines ancillary relief as limited to pre-merits decisions required to preserve the status quo.[64]

Wells Fargo complains, however, that Appellees' interpretation of the carve-out is "broad," allowing claimants to "bring any claim seeking any injunctive relief in court at any time." Resp. Br. 38. But that is the plain language of the Arbitration Agreement and, therefore, it must be enforced. As drafted here, either party may seek temporary or interim "provisional remedies" like injunctive relief, or

---

[63] Wells Fargo misleads by redrafting this definition to fit its narrative. *Compare Remedy*, Black's Law Dictionary (11th Ed. 2019) (defining "provisional remedy" as "[a] temporary remedy awarded before judgment and pending the action's disposition, such as a temporary restraining order, *a preliminary injunction*, a prejudgment receivership, or an attachment.") *with* Resp. Br. 38 ("The ordinary meaning of 'provisional remedy" is 'a temporary remedy awarded before judgment and pending the action's disposition, such as a [TRO], a prejudgment receivership, or an attachment.").

[64] *Suit*, Black's Law Dictionary (11th Ed. 2019) (defining "ancillary suit," as "[a]n action, either at law or in equity, that grows out of and is auxiliary to another suit and is filed to aid the primary suit").

"ancillary remedies" where injunctive relief aids in the primary cause of action or remedy. Wells Fargo drafted the contract to these ends, so it has no occasion to complain now.

Second, Wells Fargo misplaces its reliance on *Toyo Tire* and *Capriole*. Resp. Br. 40–41. The courts in those cases found that the relevant arbitration clauses permitted only the "interim relief … necessary to preserve the status quo and the meaningfulness of the arbitration process."[65] But both holdings were grounded in the specific language of the arbitration clauses (or governing rules) at issue. In particular, both clauses contained language emphasizing "provisional remedies," just as Wells Fargo does here.[66]

But neither case involved this carve-out, which permits the parties to seek "ancillary remedies" in court. 2-ER-65. This separate form of remedy must be interpreted separate and apart from "provisional" remedies and should not be tied

---

[65] *Toyo Tire Hldgs. of Am., Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 867 (9th Cir. 2021).

[66] *Toyo* interpreted Article 23(2) of the International Chamber of Commerce to allow "interim or conservatory measures" before an arbitrator hears a dispute. *Toyo Tire*, 609 F.3d at 979. *Capriole* interpreted language that "parallel[ed] Article 23 of the ICC rules," which allowed parties to seek "temporary or preliminary injunctive relief in connection with an arbitrable controversy, *but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.*" *Capriole*, 7 F.4th at 868 (emphasis in original). These two provisions, the *Capriole* court held, "authoriz[ed] courts to grant interim relief but strictly limit[ed] it to measures that preserve the status quo." *Id.*

to maintaining the status quo, lest the term mean nothing at all.[67] Here, "ancillary" means having a "subordinate, subsidiary, or secondary nature."[68] The issues here raise precisely the kind of ancillary claims Plaintiffs may bring in court to enforce their rights to bilateral arbitration.

The Fifth Circuit's analysis in *Schein* is more on point. Op. Br. 23. Indeed, the carve-out language in *Schein* was broader than the language in the Arbitration Agreement. *See* Resp. Br. 40. But while the *Schein* carve-out was properly read to exempt all "actions seeking injunctive relief" from arbitration, the carve-out here must be read to exempt all "provisional or ancillary … injunctive relief."[69] 2-ER-65. Limiting this language, as Wells Fargo urges, to incorporate a requirement of preserving the status quo would "rewrite the unambiguous arbitration clause" and "reach a result inconsistent with the plain text of the contract."[70] The Court should not double-down on the District Court's error and rewrite the carve-out provision

---

[67] *Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 218–79 (9th Cir. 1992) (quoting Restatement (Second) of Contracts § 203(a) cmt. b (1979) ("Since an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous.")).

[68] *Ancillary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/ancillary (last visited Sept. 20, 2023).

[69] *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 282 (5th Cir. 2019) (*Schein*).

[70] *Id.* at 283 (citing *E.E.O.C. v. Waffle House*, 534 U.S. 279, 294 (2002)).

to impose limitations that were appropriate in *Toyo* and *Capriole*, but are not here.[71]

Third, Wells Fargo's resort to canons of construction also fails. It insists that its narrow reading is supported by *noscitur a sociis*, which supposedly requires the Court to interpret the term "injunctive relief" with reference to the surrounding terms "garnishment, attachment, [and] appointment of a receiver." Resp. Br. 38–39. Courts may only apply this doctrine, however, "where words are of obscure or doubtful meaning."[72] No one has argued that the term "injunctive relief" is ambiguous or needs further explication. Wells Fargo's invocation of this doctrine only "create[s] ambiguity where the [carve-out]'s text and structure suggest none."[73]

Even if the term "injunctive relief" was tinged with ambiguity, *noscitur a sociis* would not support Wells Fargo's position. The remedies described in the contract's terms are not strictly "provisional" or interim remedies limited to preserving the status quo but are available after a decision on the merits to enforce

---

[71] *Id.* at 282–83; *see Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*, --- F. Supp. 3d ---, 2023 WL 372381, at *8 (W.D. Wash. Jan. 24, 2023); *see also Concepcion*, 563 U.S. at 339.

[72] *Leuthaser v. United States*, 71 F.4th 1189, 1199 (9th Cir. 2023) (*quoting Russell Motor Car Co. v. United States*, 261 U.S. 514, 520 (1923)).

[73] *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227 (2008).

a judgment.[74] While Wells Fargo claims the surrounding language "inform[s] the meaning of 'injunctive relief'" it fails to articulate what that meaning is. *See* Resp. Br. 39. Wells Fargo's resort to canons of construction needlessly injects ambiguity where there is none—the carve-out authorizes injunctive relief that is "provisional or ancillary."[75]

Fourth, and finally, Appellants' first cause of action seeks a "provisional remedy" under any definition. *See* Resp. Br. 38. Wells Fargo concedes that the first cause of action seeks a preliminary injunction "enjoining enforcement [of the PA order]" or "stay[ing] arbitration altogether, pending a hearing on the merits to decide if Defendants … have violated their agreement with Plaintiffs." Resp. Br. 42–43. Either injunction would be "a temporary remedy awarded before judgment and pending the action's disposition."[76] *See* Resp. Br. 38. Further, either injunction would preserve the status quo by ensuring judicial review of an order imposing class arbitration.[77] Therefore, even using the narrow definition Wells Fargo offers,

---

[74] *See, e.g.,* Cal. Code. Civ. Proc. § 706.010 (garnishment); Cal. Code Civ. Proc. § 708.620 ("The court may appoint a receiver to enforce the judgment ….").

[75] *Ali*, 552 U.S. at 227.

[76] *Remedy*, Black's Law Dictionary (11th Ed. 2019) (defining "provisional remedy").

[77] *See Stolt-Nielsen*, 559 U.S. at 670 n.2 (authorizing judicial review to prevent arbitration before arbitrators with no authority to require class arbitration).

the carve-out provision authorizes Appellants to seek injunctive relief through their first cause of action.

## **CONCLUSION**

Wells Fargo has always treated arbitration as a black box shielded from any kind of accountability or review, and this case is no different. While Wells Fargo is used to getting away with this kind of brazen manipulation of the process, the Court may intervene here because the PA Order here is final and imposes class procedures. If Wells Fargo wills bilateral arbitration upon Appellants (and its other customers), then bilateral arbitration Wells Fargo shall get. The District Court's order should be reversed with instructions to direct the Process Arbitrator to enter an order respecting the limits demanded by bilateral arbitration.

Dated: September 22, 2023      MCCUNE LAW GROUP, APC

                By:   */s/ Steven A. Haskins*
                       Richard D. McCune, SBN 132124
                       Steven A. Haskins, SBN 238865
                       Andrew Van Ligten, SBN 348696
                       Valerie L. Savran, SBN 334190
                       Emily J. Kirk, IL SBN 6275282
                       **MCCUNE LAW GROUP, APC**
                       3281 East Guasti Road, Suite 100
                       Ontario, California 91761
                       Telephone: (909) 557-1250
                       Facsimile: (909) 557-1275

                       *Attorneys for Plaintiffs-Appellants,*
                       *Alexandria Mosley, Rejoyce Kemp,*
                       *Berenice Cisneros, Bruce Parker*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that:

Appellants' Opening Brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) as this brief contains 6,858 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

Appellants' Opening Brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure. Appellants' Opening Brief has been prepared in a proportionately-spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2301 Build 16.0.16026.20002), and Times New Roman 14-point font.

Dated: September 22, 2023                          MCCUNE LAW GROUP, APC

                                                   By:   */s/ Steven A. Haskins*
                                                   Richard D. McCune, SBN 132124
                                                   Steven A. Haskins, SBN 238865
                                                   Andrew Van Ligten, SBN 348696
                                                   Valerie L. Savran, SBN 334190
                                                   Emily J. Kirk, IL SBN 6275282
                                                   **MCCUNE LAW GROUP, APC**
                                                   3281 East Guasti Road, Suite 100
                                                   Ontario, California 91761
                                                   Telephone: (909) 557-1250
                                                   Facsimile: (909) 557-1275

                                                   *Attorneys for Plaintiffs-Appellants,*
                                                   *Alexandria Mosley. Rejoyce Kemp,*
                                                   *Berenice Cisneros, Bruce Parker*