# Exhibit 4

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| **INDIVIDUAL CONSUMERS,**<br><br>Claimants,<br><br>v.<br><br>**WELLS FARGO BANK, N.A.,**<br><br>Respondent. | **WELLS FARGO BANK, N.A.'S REPLY REGARDING CLAIMANTS' AUGUST 14, 2023 SPREADSHEET OF DEMANDS** |

Pursuant to Process Arbitrator Hon. Anita Rae Shapiro's ("Process Arbitrator") request, Wells Fargo Bank, N.A. ("Wells Fargo") hereby submits this reply.

## I.    INTRODUCTION

Throughout its 23-page response (the "Response") to Wells Fargo's September 22, 2023 memorandum requesting enforcement of the Process Arbitrator's previous orders (the "September 22 Memo"), MLG's lack of due diligence in filing its original demands is evident. Instead of addressing the issue at hand (i.e., compliance with the Process Arbitrator's October 27 Order), MLG offers excuses as to why Claimants should not be expected to possess the basic information required by the AAA Consumer Rules when filing a demand for arbitration. This argument has already been exhausted. The Process Arbitrator already decided the filing requirements for these claims and given Claimants numerous opportunities to comply with her October 27 Order. But the majority of Claimants still have not done so—3,493 of 3,935 to be exact. As such, 3,493 of the Claimants should be dismissed with the caveat that MLG be permitted to re-file those demands in this same mass arbitration so long as the re-filed demands include the basic information specific to that Claimant in accordance with the requirements of the AAA Consumer Arbitration Rules and the October 27 Order.

Page **1** of **10**

The facts here remain clear: MLG did not perform due diligence when investigating Claimants' underlying claims prior to submitting Demands for Arbitration with the AAA. MLG now asks the Process Arbitrator to excuse its failure to perform that due diligence on various grounds. None of MLG's arguments should be tolerated. The truth is MLG initiated a mass arbitration against Wells Fargo by gathering as many Claimants as it could find through mal-intentioned solicitations[1] resulting in identical demands being filed against Wells Fargo. The majority of these demands were filed without performing adequate diligence as to whether such Claimants had a viable claim. The Process Arbitrator recognized this failure and entered her October 27 Order requiring MLG to provide basic information regarding Claimants' claims before moving forward with their individual merit arbitrations. For months, MLG brazenly ignored the Process Arbitrator's October 27 Order—first seeking relief from federal court which was denied and then submitting the Spreadsheets and following Clarification now being addressed. The Spreadsheets and Clarification established that MLG's failure to perform diligence resulted in thousands of demands originally being filed on behalf of Claimants that did not have or could not provide basic information supporting a viable Regulation E claim against Wells Fargo—despite the fact that MLG had asserted such a claim on Claimants' behalf.

As outlined in Section III.B of Wells Fargo's September 22 Memo, Wells Fargo seeks enforcement of the PA Orders so it can move forward with defending itself in individual merit arbitrations against Claimants for whom MLG has described as "Order-Compliant" (Tab 1). However, MLG's outright failure (and subsequent refusal) to perform diligence into Claimants'

---

[1] *See* September 7, 2022 Memorandum in Support of Request for Claimants to Provide Basic Information About Each Dispute Prior to the Demand Proceeding Through the Arbitration Process (the "September 7 Memo") at Ex. L (MLG solicitation explaining that "bringing hundreds of thousands of arbitrations, each resulting in thousands paid by Wells Fargo, means consumers can finally hit one of the world's largest corporations where it hurts.").

allegations must be stopped.²

## II.    ARGUMENT & AUTHORITIES

**A.    MLG's Response Sidesteps Its Confirmed Failure to Investigate Claimants' Claims Prior to Submitting Demands on their Behalf.**

Wells Fargo has repeatedly set forth, and this Process Arbitrator has confirmed, the basic information that must be provided in a demand being submitted to the AAA. This procedural obligation requires attorneys to conduct a reasonable investigation before asserting a claim on behalf of a client. MLG's failure to fulfill this obligation with the original Claimant filings was challenged and the Process Arbitrator gave MLG a second chance to satisfy the AAA rule requirements through her June 14 Order. When MLG attempted to abide by the June 14 Order by submitting the required Spreadsheet (and the subsequent Clarification), MLG confirmed it had not performed the required due diligence at the time it filed Claimants' demands, and that once it did begin performing diligence, many Claimants never had or cannot provide the basic information necessary to support a viable Regulation E Claim. *See also* Wells Fargo's September 22 Memo at pp. 13-15. Specifically, the Clarification established that MLG submitted demands on behalf of at least 2,389 Claimants for whom MLG cannot provide the basic information required by the October 27 Order to support a claim for which they sought relief. *See also id.* at p. 14. Importantly, MLG has now conceded that 1,635 Claimants (41.5% of all Claimants) do not have and never had a Regulation E claim against Wells Fargo, despite asserting such a claim in the boilerplate original demands filed by MLG and triggering filing fees.

MLG fails to address these facts in response to Wells Fargo's September 22 Memo. Rather,

---

² Wells Fargo does not address MLG's arguments related to MLG's Motion to Amend because if the Process Arbitrator uses her authority to issue the order requested by Wells Fargo, it would be mooted. However, if the Process Arbitrator determines that briefing on MLG's Motion to Amend is necessary, Wells Fargo confirms its previous request to be provided an opportunity to brief the impropriety of MLG's Motion to Amend.

MLG simply concludes—through a baseless affidavit lacking any foundation whatsoever for the statements it asserts—that it "performed appropriate diligence as to all clients." *See* Response at 10 (citing Catapong Decl. at ¶ 3). But the facts do not support such a conclusion. The facts instead establish that MLG submitted demands on behalf of Claimants for whom it did not perform diligence to determine whether or not they had Regulation E claims against Wells Fargo. This is the only logical conclusion, and MLG's failure to substantively address *how* it allegedly performed such "appropriate diligence" into Claimants' allegations only makes the fact that it did not do so more obvious. MLG's admission of its failure to vet Claimants' claims supports the conclusion that any non-"Order-Complaint" claims should be dismissed, and allowed to re-file as set forth in Wells Fargo's September 22 Memo. *See* September 22 Memo at p. 18.

**B.  Rather than Admit Its Failure to Perform the Adequate Due Diligence and Do So Before Submitting Any Future Demands for Tabs 2 and 3, MLG Tries to Blame Wells Fargo for Its Failures.**

As established throughout this mass arbitration, MLG has confirmed its abject failure to perform due diligence into Claimants' allegations prior to asserting demands on their behalf. Because MLG has no evidence by way of Claimant declarations or affidavits supporting its conclusory statement that it "performed appropriate due diligence as to all clients" it instead attempts to lay the burden of establishing Claimants' allegations on Wells Fargo. *See* Response at 10-14. This is not the way the arbitration process works.

First, Claimants must know whether they have a dispute with Wells Fargo before they submit a demand. They may not manufacture a claim in order to generate an opportunity for discovery. *Bennett v. Burton*, No. 2:21-cv-1340 WBS KJN P, 2023 U.S. Dist. LEXIS 67715, at *18 (E.D. Cal. Apr. 18, 2023) ("'[F]air notice pleading under Rule 8 is not intended to give parties free license to engage in unfounded fishing expedition on matters for which they bear the burden of proof at trial.") (citation omitted); *Evox Prods. v. Verizon Media*, No. CV 20-2852-CBM-

(JEMx), 2021 U.S. Dist. LEXIS 151460, at *8 (C.D. Cal. May 5, 2021) (holding that the plaintiff "cannot use discovery as fishing expedition in order to support conclusory claims"); *Van Heel v. GCA Educ. Servs.*, No. 2:20-cv-01505-AB-JEM, 2020 U.S. Dist. LEXIS 210925, at *9 (C.D. Cal. Sep. 30, 2020) ("[T]he court reminds Plaintiff that he cannot use discovery as a fishing expedition to find facts that may give credence to an unartfully pled complaint. The pleading requirement does not provide a key to 'unlock the doors of discovery for a plaintiff armed with nothing more than conclusions'; a complaint must be plausible on its face.") (citations omitted).

Second, MLG's attempt to invoke the recently-issued CFPB guidance is unfounded. Claimants did not, as MLG suggests, seek information to "manage their accounts and resolve disputes with their bank" prior to filing their demands. Response at 11, Ex. A. Rather, MLG sought information to determine *whether* Claimants *had* a dispute *after* Claimants had already submitted demands specifically alleging violations of Regulation E. Claimants submitted record request authorizations to Wells Fargo and demands for arbitration to AAA together at the same time.[3] There was no attempt by Claimants or MLG to gather this information before initiating unvetted claims against Wells Fargo. In fact, MLG admits that it did not attempt to determine whether Claimants had legitimate demands until it submitted authorizations to Wells Fargo—*after* it filed Claimants' demands. *See* Response at 10 (MLG sought relevant information and gathered what it could from Claimants, but then still filed demands regardless of whether the information supported a viable Regulation E claim), 20 (stating that "Claimants attempted to engage Wells Fargo in a fact-finding process and were rebuffed," indicating that MLG did not attempt to "fact find" prior

---

[3] A review of MLG's solicitation website shows that MLG specifically requests that Claimants submit their bank statements to "learn if [they] qualify fast!" *See Fighting Back Against Illegal and Unfair Bank Fees*, https://mccunewright.com/overdraft-fee-claims-against-wells-fargo/ (last visited October 17, 2023). Thus, MLG knows (and has known throughout this process) that it needed to review bank statements to determine whether a Claimant qualified for a Regulation E claim. It chose not to, and instead filed demands without performing diligence into whether Claimants had a viable Regulation E claim. This undermines the integrity of the process and forced Wells Fargo to pay filing fees for claims that—MLG now admits—had no merit.

Page **5** of **10**

to submitting Claimants' demands). Once a claim is filed in an applicable forum, the rules of discovery for that forum guide the discovery process. The CFPA was not designed to provide plaintiffs' firms the ability to gather quasi-class discovery, and case law is clear that MLG and Claimants are not entitled to engage in discovery in order to substantiate their claims. *See supra.* Indeed, the CFPB's Advisory Opinion specifically notes that "large banks . . . might require the consumer to comply with reasonable data security measures." *See* Response at Ex. A, 10. Sending multiple years of statements for thousands of customers to a single law firm would put an enormous amount of customer data in the hands of a single, third-party entity. This is not what the CFPA was enacted for.

Third, MLG's assertions that Claimants cannot get bank statements is absurd. As an initial matter, the affidavit of MLG's paralegal should be completely ignored. Ms. Catapang's testimony is nothing but hearsay, and MLG has provided no competent evidence supporting its allegations that Claimants do not have access to their accounts, that Wells Fargo "refused to provide the most basic account information directly to Claimants when they asked," or that "Wells Fargo instructed personnel at branches to refuse requests from customers for statements and account information when they requested it in person at branches." *See* Response at 13 (citing Catapang Decl., ¶¶ 9, 10). There was not one declaration from a claimant submitted that supports Ms. Catapang's self-serving affidavit. Rather, Ms. Catapang testifies that these allegations are based "[u]pon information and belief" and on statements from "numerous [and, unsurprisingly, *unnamed*] Wells Fargo customers." *See id.* Notwithstanding the lack of foundation and hearsay contained in Ms. Catapang's declaration, Claimants' account statements are available and can be accessed in numerous ways. In fact, both Claimants' Deposit Account Agreements and Wells Fargo's website provide phone and mail options for those unable to go online or access a branch to obtain their

account statements. *See* September 7 Memo at Ex. B, at Ex. C pg. 2*; see also Online Documents*, https://www.wellsfargo. com/online-banking/statements/ (last visited October 17, 2023). Rather than having Claimants do so and then perform diligence to ensure that Claimants have viable disputes with Wells Fargo, MLG seeks to put the burden of establishing Claimants' claims on Wells Fargo—after MLG already submitted demands on Claimants' behalf. MLG's tortured "shoot first ask questions later" litigation strategy must be struck down.

C. **As a Result of MLG's Failure to Perform Diligence and Refusal to Abide by the PA Orders, the Process Arbitrator Should Dismiss the Claimants Who Have Failed to Provide the Requisite Information Ordered on October 27, 2022—with the Caveat Claimants Can Refile Within the Confines of This Mass Arbitration Should They Provide the Requisite Basic Information Needed to File Additional Claims.**

It has been almost a full year since the Process Arbitrator entered her October 27 Order. Rather than abide by the PA Orders and meet its professional obligations to vet Claimants' claims, MLG has steadfastly refused to perform diligence into Claimants' allegations and has instead placed the blame for its failure on Wells Fargo. It is time for this mass arbitration to move forward so Wells Fargo can defend itself against those Claimants who have provided the basic minimum information necessary for Wells Fargo to do so.

Accordingly, and as outlined in detail in its September 22 Memo, Wells Fargo requests an order to proceed to individual merit arbitrations for the Claimants that have met the requirements of the PA Orders.[4] For the Claimants that have not met the PA Order's requirements, Wells Fargo requests that the Process Arbitrator enforce the October 27 Order by dismissing those Claimants' demands, pursuant to the conditions set forth in Section III.B.2 of the September 22 Memo. The Process Arbitrator has the authority to enter an order enforcing the PA Orders, and she should use

---

[4] Wells Fargo again reserves the right to seek sanctions, including but not limited to the allocation of filing fees pursuant to R-44(c), against Claimants/MLG moving forward with their claims should MLG's representation that such Claimants have complied with the PA Orders be incorrect.

Page **7** of **10**

that authority to end MLG's contempt for her orders and its professional obligations. Tellingly, MLG does not offer any analysis as to why this would be outside the Process Arbitrator's purview. Rather, it tries to keep the fees lever on Wells Fargo by re-hashing old trodden ground by claiming they should be allowed to amend nearly 90% of their submitted claims through one boilerplate pleading that seeks to govern the masses. This tactic should not be allowed.

**D.     The Process Arbitrator Dismissing Claims Does Not Violate Due Process.**

In a last-ditch final attempt, MLG contends that Wells Fargo's request to dismiss Claimants who have failed to meet the October 27 Order's requirements—nearly a year after the Process Arbitrator entered the order—somehow violates their "due process" rights. *See* Response at 21-22. This is unfounded. Wells Fargo only requests dismissal of demands for Claimants who have not or cannot provide the basic information the Process Arbitrator deemed necessary to support a viable Regulation E claim against Wells Fargo. In doing so, Wells Fargo proposes a vehicle for these Claimants to re-file their new demands claiming different violations of law in a manner consistent with the Process Arbitrator's prior orders.[5] Nothing but MLG's refusal to perform diligence into Claimants' allegations is stopping Claimants' demands from moving forward.[6] This is made clear by Wells Fargo's specific request to move forward with individual merit arbitrations for Claimants who have met the requirements of the PA Orders. Accordingly, MLG's dismissal of Claimants' demands does not violate due process.

**E.     Wells Fargo is Not Avoiding Arbitration, and Has Paid Every Invoice it has Received from AAA.**

In a curious and desperate move, MLG spends four pages of its Response arguing Wells

---

[5] Wells Fargo reserves its right to assert all affirmative defenses such as statute of limitations to any amended claim, including whether an amended claim relates back to the original filed demand.

[6] MLG's reliance on AAA's Consumer Due Process Protocol Principle 13 is misplaced. *See* Response at 21. That principle relates to discovery exchanged in a merit arbitration. The October 27 Order requires MLG to provide basic information supporting a viable Regulation E claim prior to moving forward with a Claimants' merit arbitration. The principle is not relevant to Claimants' failure to meet their filing requirements.

Fargo is somehow attempting to avoid arbitration because it doesn't want to pay the fees associated with Claimants' demands. *See* Response at 6-10. That is, quite clearly, not the case. Not only has Wells Fargo paid every invoice it has received, it has specifically requested an order from the Process Arbitrator requiring Claimants that have met the PA Orders' directives to move forward with individual merit arbitrations.

Consequently, MLG's citations to mass arbitration cases where the respondent refused to pay fees and instead sought to litigate in federal court are unavailing. *See* Response at 8-9 (citing *Wallrich v. Samsung Elecs. Am., Inc.,* No. 22 C 5506, 2023 WL 5935024, at *10 (N.D. Ill. Sept. 12, 2023) (Samsung **declined to pay its share of arbitration fees**), *Abernathy v. Doordash, Inc.*, 438 F.Supp. 3d 1062, 1068 (N.D. Cal. 2020) (describing the **company's refusal to pay fees**), and *Uber Techs., Inc. v. Am. Arb. Ass'n, Inc.*, 204 A.D.3d 506, 510, 167 N.Y.S.3d 66, 70 (2022) (Uber is **trying to avoid paying the arbitration fees**). Indeed, it was MLG, not Wells Fargo, who sought relief in federal court (and lost) after disagreeing with the Process Arbitrator's lawful orders. Here, unlike the respondents in the cases relied upon by MLG, Wells Fargo has consistently stated its intent to arbitrate individually with Claimants and to pay fees associated with such individual arbitrations. Wells Fargo simply requested that MLG perform its professional and ethical obligations to vet Claimants' allegations prior to moving forward with their individual merit arbitrations—a request the Process Arbitrator has already granted by entering the PA Orders.

### III. CONCLUSION

For the foregoing reasons, Wells Fargo respectfully requests that the Process Arbitrator move forward with this mass arbitration as outlined in its September 22, 2023 Memo.

*/s/ Alicia A. Baiardo*
Alicia A. Baiardo
MCGUIREWOODS LLP
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111
Tel: 415.844.1973
abaiardo@mcguirewoods.com

Amy M. Turk
MCGUIREWOODS LLP
World Trade Center
101 West Main Street
Suite 9000
Norfolk, VA 23510
Tel: 757.640.3711
aturk@mcguirewoods.com

Joel S. Allen
Paul M. Chappell
MCGUIREWOODS LLP
2000 McKinney Avenue
Suite 1400
Dallas, TX 75201
Tel: 214.932.6464
jallen@mcguirewoods.com
pchappell@mcguirewoods.com

Joshua D. Davey
William C. Mayberry
Jason D. Evans
Michael C. Peretz
Mary K. Grob
Jacob R. Franchek
TROUTMAN PEPPER HAMILTON SANDERS LLP
301 S. College St., Ste. 3400
Charlotte, NC 28202
Tel: 704.916.1503
joshua.davey@troutman.com
bill.mayberry@troutman.com
Jason.Evans@troutman.com
michael.peretz@troutman.com
mary.grob@troutman.com
jacob.franchek@troutman.com

*Counsel for Defendant Wells Fargo Bank, N.A.*